# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE, JEAN LICATA, AND ARSENIA RODRIGUES, on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 1:10-CV-10380-RGS |
| v. ) ) | |
| J.P. MORGAN CHASE BANK, NA, ) ) | |
| Defendant. ) | |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO STRIKE EXPERT REPORT OF CHRISTOPHER WYATT**

**INTRODUCTION**

In support of their motion for a preliminary injunction and provisional class certification, plaintiffs submitted the expert report of Christopher Wyatt ("Wyatt") regarding defendant JPMorgan Chase Bank, N.A.'s ("Chase's") alleged failure to convert Trial Period Plans ("TPPs") into permanent loan modifications as purportedly required under the Home Affordable Modification Program ("HAMP"). [Dkt. 23.] As Federal Rule of Evidence 702 makes clear, however, expert testimony is admissible only if it is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). Wyatt's testimony is neither. First, Wyatt's expert report is not relevant because it merely states legal conclusions. Second, Wyatt fails to establish a reliable basis for his opinions. Accordingly, pursuant to Federal Rule of Evidence 702, Chase moves this Court to issue an order striking Wyatt's expert report in its entirety.

**ARGUMENT**

**I.   THE COURT SHOULD STRIKE THE WYATT EXPERT REPORT BECAUSE IT CONSISTS OF NOTHING MORE THAN INADMISSIBLE LEGAL CONCLUSIONS.**

Under Federal Rule of Evidence 702, expert testimony should only be admitted if it is relevant in the sense that it "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702; *see also Cipollone v. Yale Indus. Prods.*, 202 F.3d 376, 380 (1st Cir. 2000) ("[T]he ultimate purpose of the [expert evidence] inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue."); *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (internal citation omitted) ("To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue."); *SEC v. Goldsworthy*, No. 06-10012-JGD, 2008 U.S. Dist. LEXIS 62223, at *5-6 (D. Mass. Jan. 3, 2008)

(internal quotations and citation omitted) ("[A]n expert opinion must be helpful to the trier of fact and should not be admitted where it would merely tell the jury what result to reach.").

Legal conclusions, *i.e.* opinions on an ultimate issue of law, are not a proper subject of expert testimony. *See, e.g.*, *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 79 (1st Cir. 2006) ("Generally, an expert may not offer an opinion concerning a legal question."); *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 114 (1st Cir. 2003) ("Courts generally have held legal opinion testimony inadmissible under Fed. R. Evid. 702."); *United States v. Prigmore*, 243 F.3d 1, 18-19 n.3 (1st Cir. 2001) ("[E]xpert testimony proffered solely to establish the meaning of a law is presumptively improper."). This is so because expert testimony that articulates and applies the relevant law does not assist the decision-maker. Rather, it circumvents the decision-making function by telling the judge or jury how to decide the case. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) (expert testimony containing legal conclusions cannot properly assist the trier of fact); *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 357-58 (D. Mass. 2008) (citation omitted) ("An expert may not 'assist' the jury by expounding upon the law . . . ."); *Chapman v. Bernard's, Inc.*, 167 F. Supp. 2d 406, 421 (D. Mass. 2001) ("[An expert] is not qualified . . . to state conclusions of law because such conclusions do not 'assist the trier of fact' as required by Rule 702.").

Exclusion of Wyatt's expert report is proper here. The vast majority of Wyatt's report (15 of 18 pages) simply characterizes the Treasury guidelines and initiatives regarding HAMP. Wyatt then purports to apply these guidelines to Chase's conduct in order to assert his ultimate legal conclusion — that "Chase fails to meet its obligations under TPP agreements." (Wyatt Expert Report at 16.) Wyatt's interpretation of what is purportedly promised in the TPPs is a naked legal conclusion far afield from any appropriate subject of expert testimony. *See*

*Goldsworthy*, 2008 U.S. Dist. LEXIS 62223, at *11 (internal quotations and citations omitted) ("[I]t is not appropriate to have experts opine as to the legal obligations of the parties under the contract. The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do [courts] permit expert testimony."). This is a clear attempt to circumvent the Court's decision-making function by offering an "expert" opinion on the legal effect of the TPPs and the proper legal interpretation of the HAMP guidelines.

Indeed, the court in *Pelletier* came to the same conclusion in a similar case. There, the plaintiff argued that the district court improperly excluded the testimony of a safety expert regarding the applicability of Occupational Safety and Health Administration regulations to the defendant's conduct. *Pelletier*, 470 F.3d at 54-55. The Court of Appeals disagreed, explaining that the expert testimony amounted to nothing more than an interpretation "about the law that would impinge on the roles of the judge and the jury." *Id*. Wyatt's expert report does nothing to assist the Court in resolving a fact at issue and should likewise be excluded.

Wyatt's conclusions about Chase's compliance with HAMP guidelines are also irrelevant, even under plaintiffs' theories of liability. All of plaintiffs' claims are predicated on the notion that borrowers who enter into TPPs, make the three initial payments as required, and submit the requested documentation, are automatically entitled to a permanent HAMP modification. (FAC ¶¶ 1-5, 33-43, 131, 145, 152, 158, 162, 165). There is no claim for breach of the HAMP guidelines themselves. Moreover, Wyatt's rank speculation about whether Chase provided timely decisions on HAMP eligibility and why are of no legal consequence.

## II. THE COURT SHOULD STRIKE WYATT'S EXPERT REPORT FOR THE ADDITIONAL REASON THAT IT IS UNRELIABLE.

In addition to being irrelevant, Wyatt's expert report is also unreliable because it fails to adequately support his conclusions. *See* Fed. R. Evid. 702 (expert testimony must be "the

product of reliable principles and methods," which the expert must have applied "reliably to the facts of the case"); *see also Kumho Tire Co.*, 526 U.S. 137 at 142 (the district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination") (emphasis in original). For instance, Wyatt opines that, "based on my experience in the industry, research, and my personal experience in assisting a homeowner with a Chase loan modification, Chase's failure to meet [its obligation under the TPP agreements] is directly caused by inadequate staffing and procedures." (Wyatt Expert Report at 16.) However, Wyatt fails to demonstrate how his experience with a *single* homeowner supports his conclusion that Chase is failing in its obligations to *all* homeowners. Nor does Wyatt explain on what conceivable basis he concluded that Chase's purported failures as to this particular customer (or any other customers) were due to the lack of staff and adequate procedures. Indeed, even if an expert witness relies "solely or primarily on experience, [he] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note. Wyatt does not even attempt to meet this burden in his expert report.

Wyatt likewise fails to explain how Chase's congressional testimony has any bearing on its supposed failure to meet its obligations under TPP agreements. According to Wyatt, Chase indicated in its congressional testimony that "it was undertaking aggressive initiatives designed to convert eligible active TPP's into permanent loan modifications" by "initiating, among other things, new call campaigns, hiring hundreds of new staff, centralizing documentation and tracking systems to effectively implement, manage, and timely convert eligible aged TPP's into permanent loan modifications." (Wyatt Expert Report at 15.) Wyatt then concludes that Chase's alleged failure to convert TPPs is the result of "inadequate staffing and procedures." (*Id*. at 16.)

4

This conclusion could only be supported, however, if Chase failed to follow through on its publicly announced initiatives — a fact Wyatt wholly fails to address. Instead, he states only that inadequate staffing and procedures have "persisted." (*Id.*) As with his reliance on his personal experience with a homeowner, Wyatt here too fails to make the required connection between the basis for his opinion and his ultimate conclusion. *See United States v. Certain Land Located in County of Barnstable*, 674 F.2d 90, 93 n.4 (1st Cir. 1982) ("The fact that a witness is an expert does not justify an opinion for which he can show no basis or reason.").

## CONCLUSION

For the reasons set forth above, Wyatt's expert report is both irrelevant and unreliable. Accordingly, the Court should issue an order striking the report in its entirety pursuant to Federal Rule of Evidence 702.

Dated: October 1, 2010							Respectfully submitted,

JPMorgan Chase Bank, N.A.,
By its attorneys,

_____
Donn A. Randall (BBO No. 631590)
Matthew A. Kane (BBO No. 666981)
BULKLEY, RICHARDSON AND GELINAS, LLP
98 North Washington St., Suite 500
PO Box 9750
Boston, Massachusetts 02114-0016
Telephone: (617) 368-2520
Facsimile: (617) 368-2525
drandall@bulkley.com
mkane@bulkley.com

OF COUNSEL:
Michael J. Agoglia (CA SBN 154810)
Wendy M. Garbers (CA SBN 213208)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
magoglia@mofo.com
wgarbers@mofo.com

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

The undersigned counsel for defendant, JPMorgan Chase Bank, N.A., hereby certifies that he has conferred with counsel for the plaintiffs, but plaintiffs' counsel does not agree to the relief sought in this motion to strike the expert report of Christopher Wyatt.

 /s/ Donn A. Randall
Donn A. Randall

## CERTIFICATE OF SERVICE

       I, Donn A. Randall, hereby certify that a true copy of the foregoing document was served upon all counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on October 1, 2010.

       /s/ Donn A. Randall
       Donn A. Randall