## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE, JEAN LICATA and ARSENIA RODRIGUES, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**J.P. MORGAN CHASE BANK, NA,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 1:10-CV-10380-RGS** |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS'
## MOTION FOR PROVISIONAL CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

    A.    The U.S. Treasury's Home Affordable Modification Program. ........................... 2

    B.    Plaintiffs' Complaint.......................................................................................... 4

LEGAL STANDARD................................................................................................... 5

ARGUMENT .............................................................................................................. 6

I.      RULE 23 DOES NOT PERMIT "PROVISIONAL" OR PIECEMEAL
      CLASS CERTIFICATION............................................................................... 6

    A.    Rule 23 Was Amended to Eliminate "Conditional" Certifications. ...................... 6

    B.    Plaintiffs Cannot Squeeze This Case into Rule 23(b)(2) by Seeking
          Certification Solely to Obtain Preliminary Injunctive Relief. ............................... 7

II.    IN ANY EVENT, PLAINTIFFS' MOTION FOR CLASS
      CERTIFICATION IS WHOLLY PREMATURE. ............................................. 8

    A.    Chase Has Had No Opportunity for Discovery. ..................................................... 8

    B.    Plaintiffs Have Offered No Evidence Supporting Their Motion. .......................... 9

III.   THE PUTATIVE CLASS FAILS BASIC REQUIREMENTS OF RULE
      23.................................................................................................................. 10

    A.    The Putative Class Is Not Appropriately Subject to a Uniform
          Classwide Injunction....................................................................................... 10

          1.    The Act of Foreclosing on a Property Is Not One Generally
               Applicable to an Entire Class....................................................................... 11

          2.    No Uniform Injunction Could Appropriately Be Entered as
               to the Class as a Whole. .............................................................................. 13

    B.    None of the Named Plaintiffs Has Standing to Seek the
          Preliminary Injunctive Relief Demanded on Behalf of the Putative
          Class............................................................................................................. 14

    C.    The Limited Information in Chase's Records Already Shows that
          None of the Named Plaintiffs Is Adequate or Typical.......................................... 17

CONCLUSION........................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................................................11, 16

*Bolin v. Sears Roebuck & Co.,*
   231 F.3d 970 (5th Cir. 2000) ....................................................................................14

*Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.,*
   585 F.3d 33 (1st Cir. 2009)..........................................................................................9

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978)......................................................................................................6

*Cruz v. Farquharson,*
   252 F.3d 530 (1st Cir. 2001)...............................................................................16, 17

*DeRosa v. Mass. Bay Commuter Rail Co.,*
   694 F. Supp. 2d 87 (D. Mass. 2010) ....................................................7, 10, 15, 18

*E. Tex. Motor Freight Sys. v. Rodriguez,*
   431 U.S. 395 (1977)....................................................................................................17

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (2d Cir. 1974).......................................................................................10

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982)..................................................................................................6, 9

*Healey v. Murphy,*
   No. 01-11099-NG, 2008 U.S. Dist. LEXIS 117049 (D. Mass. Nov. 25, 2008) ...............14, 15

*In re Carbon Black Antitrust Litig.,*
   No. 03-10191-DPW, MDL Dkt. No. 1543,
   2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18, 2005) .............................................9

*In re Digital Equip. Corp. Sec. Litig.,*
   No. CA 83-3255-MA, 1985 U.S. Dist. LEXIS 21566 (D. Mass. Mar. 20, 1985) ....................9

*In re Monumental Life Ins. Co.,*
   365 F.3d 408 (5th Cir. 2004) ....................................................................................13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
   522 F.3d 6 (1st Cir. 2008).................................................................................. 6, 15-16

*In re Organogenesis Sec. Litig.*,
 241 F.R.D. 397 (D. Mass. 2007) ........................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 230 F.R.D. 61 (D. Mass. 2005) ...........................................................................7

*Jaffee v. United States*,
 592 F.2d 712 (3d Cir. 1979) ................................................................................8

*Markarian v. Conn. Mut. Life Ins. Co.*,
 202 F.R.D. 60 (D. Mass. 2001) ...........................................................................7

*McElhaney v. Eli Lilly & Co.*,
 93 F.R.D. 875 (D.S.D. 1982) .............................................................................14

*Mogel v. UNUM Life Ins. Co. of Am.*,
 646 F. Supp. 2d 177 (D. Mass. 2009) ..................................................................8

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ...........................................................................................10

*Richards v. Delta Air Lines, Inc.*,
 453 F.3d 525 (D.C. Cir. 2006) .............................................................................8

*S. Pac. Terminal Co. v. ICC*,
 219 U.S. 498 (1911) ...........................................................................................16

*Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*,
 264 F.R.D. 11 (D. Me. 2010) ...............................................................................9

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
 323 F.3d 32 (1st Cir. 2003) .................................................................................6

## OTHER AUTHORITIES

Federal Rules of Civil Procedures
 Rule 23 ...................................................................................... *passim*
 Rule 23(a) ...............................................................................................14
 Rule 23(b)(2) .............................................................................. *passim*
 Rule 23 advisory committee's notes to 2003 amendments ........................................6

5 James Wm. Moore, *Moore's Federal Practice*
 § 23.80[2] (3d ed. 2008) ......................................................................6

HAMP Suppl. Dir. 09-07, *available at*
 https://www.hmpadmin.com/portal/docs/hamp_servicer/sd0907.pdf. ......................................5

Mass. Super. Ct. Civ. Practice Jury Instructions
   § 13.1.19..................................................................................................................................17

Report to the Judicial Committee on Rules of Practice and Procedure (Sept. 2002) ..................6, 9

## INTRODUCTION

Plaintiffs' motion for class certification, like the accompanying preliminary injunction motion, is so procedurally and substantively flawed that it appears to be wholly tactical in nature. Though plaintiffs characterize their motion as "provisional," Rule 23 was amended in 2003 to clarify that there are no grounds for such wink-and-nod class certifications.  And there is no basis to serve up class certification here before discovery has even opened, much less been pursued, with respect to the propriety of that significant procedural step.

Nor is there any basis for plaintiffs' piecemeal approach to class certification here.  In an attempt to avoid a full-blown class certification analysis, plaintiffs seek Rule 23(b)(2) certification solely for the purpose of seeking preliminary injunctive relief.  Rule 23(b)(2), however, applies only where the *final* relief sought is predominantly injunctive.

Moreover, even ignoring the premature and improperly piecemeal approach suggested by plaintiffs, the facts available now reveal that plaintiffs' cavalier approach to certification falls far short of the rigorous analysis required under Rule 23.  Rule 23(b)(2) requires the defendant's conduct to have applied generally to the class as a whole, such that a uniform classwide injunction would be appropriate.  Despite plaintiffs' attempt to move quickly over this prerequisite by mouthing general allegations of common claims and common conduct, even a modest inquiry, much less the required rigorous analysis, confirms the contrary to be true.  Over *40%* of the putative class includes borrowers who are in no imminent danger of foreclosure because they are being actively evaluated for a permanent modification and Chase's policy is to forbear from foreclosure in those circumstances, as required under Treasury guidelines. Additionally, the putative class includes borrowers who never sent in any documentation necessary for a permanent modification, as well as those whose documentation shows that they

are ineligible for a permanent modification under the governing federal guidelines.  Even under

plaintiffs' theories of liability, those borrowers have no claim, much less grounds, to bar Chase

from foreclosing.  Ferreting out those borrowers whose facts comport with the underlying claims

would require the very case-by-case review that Rule 23(b)(2) is designed to avoid.

Furthermore, the named plaintiffs are patently improper class representatives, because

none face any impending foreclosure and so lack standing to pursue injunctive relief on behalf of

themselves or the class.  It is black-letter law that plaintiffs cannot represent a class in seeking

relief that plaintiffs could not seek on their own behalf.  What is more, plaintiffs either fail to

even meet their own class criteria, or are otherwise atypical.  Three of them failed to make the

payments required under their Trial Period Plans ("TPPs").  The remaining plaintiffs were

ineligible for a modification because their paystubs showed that their household income was

significantly different from what they stated when they applied for a modification.

Plaintiffs' motion for class certification appears to be nothing more than an improper

attempt to reargue and influence the Court's consideration of Chase's pending motion to dismiss.

Whatever its impetus, it should be denied for these numerous, independent reasons.

## BACKGROUND

### A.    The U.S. Treasury's Home Affordable Modification Program.

As described in greater detail in Chase's motion to dismiss, plaintiffs' Complaint centers

on the assertion that Chase was purportedly required to provide the putative class with permanent

loan modifications under the U.S. Treasury's Home Affordable Modification Program

("HAMP").  HAMP offers financial incentives for borrowers, servicers, and investors to enter

into loan modifications where such modifications make economic sense for all parties.  (*See* First

Am. Compl. ("FAC") Ex. 2.)  Pursuant to congressional delegation, Treasury promulgated a

series of HAMP guidelines that established specific criteria for determining which loans are

eligible for modification under HAMP.  For example, to be HAMP-eligible, a loan must be a first-lien mortgage, in default or imminent danger of default, secured by the borrower's primary residence, and involve a property having four or fewer units.  (FAC Ex. 2 at p. 3.)

In addition, if a loan meets those basic criteria, the guidelines enumerate a sequence of steps for servicers to apply—known as the "Standard Modification Waterfall"—to generate a potential modification that would lower the borrower's payment to no more than 31% of his or her monthly income.  (*Id*. at p. 9.)  The Waterfall includes:  reduction of the interest rate (to no less than 2%), extension of the term of the loan (to no more than 480 months), and principal forbearance.  (*Id*. at pp. 10-11.)  A potential modification can fail at the Waterfall stage if, for example, the borrower's income is insufficient to bring the payment down to the 31% threshold.

If the Waterfall generates a potential loan modification, the servicer is then required to run the potential modification through a model that compares the net present value ("NPV") of a HAMP modified loan to the NPV of an unmodified loan to determine if modification makes economic sense.  (*Id.* at pp. 5-6.)  A loan is HAMP-eligible only if it passes this NPV test.  (*Id.*)

In the summer and fall of 2009, when plaintiffs were put onto trial plans (FAC ¶¶ 50, 73, 74, 95, 110), the HAMP guidelines provided that servicers were to evaluate HAMP eligibility at two separate points.  Servicers were to perform an initial evaluation to place potentially qualifying borrowers into TPPs, which reduced their monthly payments while their loans were considered for permanent modification.  (FAC Ex. 3 at p. 2.)  In this initial evaluation, servicers had the option of evaluating applicants based solely upon verbal representations of eligibility.  (FAC Ex. 2 at pp. 6-7.)  This procedure allowed servicers to provide potentially eligible borrowers with payment relief quickly, by furnishing TPPs prior to receiving supporting documentation.  After the borrower returned the TPP letter, and provided the documentation

necessary to verify financial eligibility, the servicer would then finally evaluate the borrower for eligibility for a permanent modification.[1] (*Id*.)  The guidelines mandated that, where a TPP was extended based on verbal representations, the servicer "must" use the verified documentation to confirm eligibility before extending a permanent modification.  (*Id.* at pp. 5-6.)

Although initial reliance on verbal representations allowed servicers to expedite TPPs, it resulted in some borrowers in active TPPs being found ineligible for permanent modifications, once their information was later verified.  On January 28, 2010, Treasury issued Supplemental Directive 10-01, which initiated a "significant program change" applicable to TPPs with a first trial payment date of June 1, 2010.  Most significantly, it directed servicers to require "full verification of borrower eligibility prior to offering a trial period plan."  Plaintiffs were put on TPPs long before then (FAC ¶¶ 50, 74, 95, 110), but it is instructive that this change would, of course, have been completely unnecessary if plaintiffs were even remotely correct in their assertion that the TPP process required the same up-front verification at the time they applied.

### B.    Plaintiffs' Complaint.

Plaintiffs' Complaint is based on the notion that the extension of a TPP creates a contractual entitlement to a permanent loan modification, regardless of whether the ultimate evaluation of the borrowers' paperwork shows them to be HAMP-eligible.  Plaintiffs assert that, so long as they submitted three TPP payments and sent in the requested documentation, they were entitled to permanent loan modifications.  (FAC ¶ 41.)  That theory is based principally on the following sentence in the TPP form drafted by the Treasury Department:

---

[1] Plaintiffs have elsewhere suggested that, at that time, servicers were required to use the same test to determine initial eligibility based on verbal documentation as to determine ultimate eligibility for a permanent modification under HAMP based on verified documentation. However, nothing in the program documentation that existed at the time plaintiffs were put on TPPs (June 2009) imposed any such requirement.

> If I am in compliance with this Loan Trial Period and my
> representations in Section 1 [attesting to hardship and promising to
> provide documentation] continue to be true in all material respects,
> then the Lender will provide me with a Loan Modification
> Agreement, as set forth in Section 3.

(FAC ¶ 52.)

In the very next paragraph, however, the TPPs state that the borrower's documentation must be sent "to permit verification of all of my income . . . to determine *whether I qualify* for the offer [of a permanent loan modification] described in this Plan (the 'Offer')." (FAC Ex. 8 at p. 9) (emphasis added).) The TPPs highlight the possibility that the borrower may "not qualify for the Offer" (*id.*) and emphasize that "the Loan documents will not be modified unless and until . . . I meet *all of the conditions* required for modification." (*Id.* at p. 10 ¶ 2.G (emphasis added).) The accompanying cover letter confirms this point:  "*If you qualify* under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan . . . ." (FAC Ex. 7 at p. 3 (emphasis added).) The letter highlights the possibility that "[y]ou may not qualify for this loan modification program." (*Id.*)  The Frequently Asked Questions section asks "How long will it take to process my modification request and *determine if I qualify* for the program?" and "What do you do with my first trial period payment *if I do not qualify* for the program?" (*Id.* at p. 7 (emphasis added).)

In March 2010, after plaintiffs enrolled in TPPs, the form TPP on which plaintiffs rely as the "contract" at issue was changed. (*See* HAMP Suppl. Dir. 09-07 at 6-7, Exs. C, D, *available at* https://www.hmpadmin.com/portal/docs/hamp_servicer/sd0907.pdf.)  The new form, which is not executed by the borrower, does not contain the language on which plaintiffs rely. (*Id.*)

## LEGAL STANDARD

Plaintiffs' articulation of the class certification standard is plainly incorrect. Rule 23 does not permit a court to alter the substantive dimensions of a case so that it may be tried as a class

action merely because the plaintiffs insist the claim involves a "common practice" or "common claims." Rather, a court must conduct a "rigorous analysis" to satisfy itself that the moving party has met its burden on each element. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982); *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (same). Far from accepting the allegations in the complaint as true, the Supreme Court has long observed that the "determination of class action questions is intimately involved with the merits of the claims" and "*generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.*" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978) (citations and internal quotations omitted) (emphasis added). Courts must "probe behind the pleadings" to "formulate some prediction as to how specific issues will play out in order to assess whether the proposed class meets the legal requirements for certification." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008) (citation omitted).

## ARGUMENT

I.    **RULE 23 DOES NOT PERMIT "PROVISIONAL" OR PIECEMEAL CLASS CERTIFICATION.**

A.    **Rule 23 Was Amended to Eliminate "Conditional" Certifications.**

The 2003 amendments to Rule 23 eliminated language permitting "conditional" class certification, reasoning that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee's notes to 2003 amendments. "The provision for conditional class certification is deleted to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied." Report to the Judicial Committee on Rules of Practice and Procedure ("Committee Report"), at 12 (Sept. 2002); *see also* 5 James Wm. Moore, *Moore's Federal*

*Practice* § 23.80[2] (3d ed. 2008) ("The 2003 amendment clarifies that courts should not grant certification except after searching inquiry, and that courts should not rely on later developments to determine whether certification is appropriate."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005) (relying on 2003 amendments in denying class certification due to incomplete factual record). Not surprisingly, plaintiffs cite no cases decided after the 2003 amendments to Rule 23 to support the notion that "provisional certification" is proper. Plaintiffs' motion should be denied as without any basis under the Rules.

> **B.      Plaintiffs Cannot Squeeze This Case into Rule 23(b)(2) by Seeking Certification Solely to Obtain Preliminary Injunctive Relief.**

Plaintiffs' piecemeal approach to class certification is also improper for another reason. "[P]laintiffs may avail themselves of [Rule 23(b)(2)] only if injunctive or declaratory relief is the predominant remedy they seek." *Markarian v. Conn. Mut. Life Ins. Co.*, 202 F.R.D. 60, 70 (D. Mass. 2001) (quotation marks omitted). Plaintiffs purport to satisfy this requirement by seeking class certification solely to obtain a preliminary injunction. Rule 23(b)(2), however, looks to whether the *final relief* sought is injunctive. Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendments (Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates . . . predominantly to money damages").

Here, the final relief sought by plaintiffs in this case is predominantly money damages, not injunctive relief. (FAC Prayer ¶¶ f and g (seeking actual, statutory, and treble damages).) Where an action seeks both money damages and injunctive relief, "[m]onetary relief predominates . . . unless it is incidental to requested injunctive relief." *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 102 (D. Mass. 2010). Money damages are "incidental" only where such damages are "not dependent in any way on the intangible, subjective differences of each class member's circumstances" and "flow directly from liability to the class *as a whole*

on the claims forming the basis of the injunctive . . . relief." *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 183 (D. Mass. 2009) (emphasis in original) (citation and quotation marks omitted). Plaintiffs allege that they were harmed by "wrongful foreclosures," "less favorable loan modifications," "increased fees," "loss of savings," "loss of opportunities," and "significant stress and emotional distress." (FAC ¶ 166.) Each of those purported harms is dependent on "subjective differences of each class member's circumstances," and is in no way incidental to classwide proof on an injunctive relief claim. *Mogel*, 646 F. Supp. 2d at 183.

Moreover, plaintiffs' requested preliminary "injunctive" relief is just another form of damages. The preliminary injunction, if granted, would permit borrowers to stop paying by denying Chase the remedy of foreclosure. That puts money in class members' pockets by taking it away from Chase. "[S]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,'" and are not suitable for Rule 23(b)(2) certification. *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530-31 (D.C. Cir. 2006) (denying Rule 23(b)(2) certification); *see also Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir. 1979) (same).

Plaintiffs cannot use their preliminary injunction motion to dress up their damages case as an action suitable for mandatory, non-opt-out class certification under Rule 23(b)(2).

## II.   IN ANY EVENT, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IS WHOLLY PREMATURE.

### A.   Chase Has Had No Opportunity for Discovery.

The rigorous analysis required under Rule 23 presupposes an opportunity to develop the factual record. As the First Circuit recently held:

> In all but the clearest of cases, the existence vel non of a sufficiently defined class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification. Reviewing the

> complaint alone is not normally a suitable method for determining
> whether a class eventually can be certified.

*Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41-42 (1st Cir. 2009);

*see also Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*, 264 F.R.D. 11, 14 (D. Me. 2010)

(relying on College of Dental Surgeons in denying class certification based on the inadequacy of

the factual record); *In re Digital Equip. Corp. Sec. Litig.*, No. CA 83-3255-MA, 1985 U.S. Dist.

LEXIS 21566, at *3-4 (D. Mass. Mar. 20, 1985) ("declin[ing] to determine a class at this time

and reserv[ing] a final decision until more facts are presented").  Indeed, Rule 23 was amended

in 2003 to emphasize that courts can and should permit discovery prior to class certification.

Committee Report, at 10 (noting that the pre-amendment rule "led courts to believe that they are

overly constrained in the period before certification," when in fact "discovery may be

appropriate during this period to illuminate issues bearing on certification").

Here, discovery has not even opened.  Chase moved to dismiss in order to obtain a

determination of legal sufficiency of plaintiffs' claims before being put to the burden and

expense of discovery.  Accordingly, Chase has had no opportunity, for example, to depose

plaintiffs or to discover whether they are adequate and typical representatives.  Chase has had no

opportunity to discover whether plaintiffs' representations on their TPP applications were

accurate.  Chase has not even had a chance to learn whether plaintiffs' properties are their

primary residences, as required for a HAMP modification.  The Court is left only with plaintiffs'

untested general assertions that they satisfy Rule 23.  *See Gen. Tel. Co. of the Sw.*, 457 U.S. at

160 (requiring "actual, not presumed conformance" with Rule 23).

### B.        Plaintiffs Have Offered No Evidence Supporting Their Motion.

The burden of demonstrating that all of the elements of Rule 23 are satisfied "rests

squarely on plaintiffs."  *In re Carbon Black Antitrust Litig.*, No. 03-10191-DPW, MDL Dkt.

No. 1543, 2005 U.S. Dist. LEXIS 660, at *42 (D. Mass. Jan. 18, 2005).  Yet, plaintiffs submit

virtually no evidence on key Rule 23 elements.[2]  For example, plaintiffs adduce no evidence of

any classwide uniformity in the foreclosure practices that they seek to enjoin on behalf of the

class.  Similarly, plaintiffs submit no evidence that Chase's modification practices were uniform.

Nor could they.  Treasury, which has issued 14 revisions to the guidelines since HAMP began

last year, has continually required servicers to alter their processes as program requirements

evolve.  Indeed, as of March 2010, Treasury required servicers to use the new form of TPP,

which is not executed by the borrower and does not contain the purported promise on which

plaintiffs' claims rely.  Plaintiffs make no mention of this change to the "contract" on which they

base their claims, and offer no explanation of how those class members who did not sign any

TPP are somehow similarly situated in pursuing their contract theories to those who did.

### III.    THE PUTATIVE CLASS FAILS BASIC REQUIREMENTS OF RULE 23.

#### A.    The Putative Class Is Not Appropriately Subject to a Uniform Classwide Injunction.

Even if this Court were to consider plaintiffs' motion on its merits, the putative class does

not even come close to satisfying Rule 23(b)(2).  A Rule 23(b)(2) class is a "mandatory" class,

from which "class members have no absolute right to opt out."  *DeRosa*, 694 F. Supp. 2d at 94.

To obtain such certification, plaintiffs must show *both* (1) that Chase "acted or refused to act on

grounds that apply generally to the class," *and* (2) "that final injunctive relief . . . is appropriate

respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Those criteria are "mainly, though not

---

[2] Plaintiffs even attempt to shift the burden to Chase of providing class notice.  (*See* Pls.' Mem. in Support of Mot. for Pr. Inj. at 2, 18 (demanding that the Court require "Chase to immediately notify class members" of this action).)  It is black-letter law, however, that "a plaintiff must initially bear the cost of notice to the class," absent some extraordinary showing.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (2d Cir. 1974); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978).  Plaintiffs make no attempt to make any such showing.

exclusively," satisfied "in the civil rights field," where a defendant discriminated on a classwide basis that can be remedied through a classwide injunction. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs fail both prongs of the test.

### 1. The Act of Foreclosing on a Property Is Not One Generally Applicable to an Entire Class.

The act that plaintiffs seek to preliminarily enjoin — that is, foreclosing on a property — is an individualized one based, by its very nature, on the particular circumstances of the borrower's default. Plaintiffs attempt to avoid this problem by asserting that all foreclosures involving the putative class would be improper because those borrowers were purportedly entitled to HAMP modifications, based on alleged promises made by Chase in the TPPs. The putative class, however, includes numerous borrowers who plainly have no basis to demand any permanent modification under HAMP.

Unlike the putative class definition in their Complaint, the class that plaintiffs now propose to certify does not require class members to have "complied with their obligations under a written TPP Agreement." (FAC ¶ 127.) Thus, for example, the putative class includes those who never sent in any documentation, in direct violation of the provisions of the so-called "TPP contract." (FAC Ex. 8 at p. 9 ¶ 1.D.) The putative class also includes borrowers who lied about their hardship, being in imminent default, or about occupying their property as their primary residence, contravening the attestation under penalty of perjury that all "information [provided] regarding my eligibility" for a TPP is "true and correct." (*Id.* at p. 9 ¶ 1.E.)

In addition, the putative class definition contains no requirement that borrowers must have been eligible for a permanent modification under HAMP. Borrowers could have met the initial TPP eligibility requirements, but ultimately been found HAMP-ineligible, for a number of reasons. For example, the borrower may have lied, made a mistake, or been less precise in

verbal representations to obtain a TPP; the borrower's home value or income may have changed since the initial TPP evaluation; or the borrower may not have submitted the required documents. Moreover, contrary to plaintiffs' assertions, HAMP guidelines at that time did not require Chase to employ the same test when assessing initial eligibility for a TPP as when assessing ultimate eligibility for a HAMP modification.  (*See* Opp'n to Mot. for Pr. Inj. ("PI Opp'n") at Part II.A.) Borrowers could therefore have been eligible for a TPP, but not eligible for a permanent modification.  Although the FAC contends that Chase "waived" its right to evaluate borrowers for HAMP eligibility where no written denial of a permanent modification was issued within three months (FAC ¶ 144), plaintiffs point to no provision of the TPPs that sets any such deadline.  The TPPs state that "time is of the essence," but do not set any deadline other than the trial payment deadlines.  The TPPs define "Modification Effective Date" as the end of the Trial Period, but nowhere do they state that a modification must be made by that date.  On the contrary, the TPPs provide that no modification can occur until *after* that date.  (FAC Ex. 8 at p. 11 ¶ 2.G; FAC Ex. 9 at p. 4 ¶ 2.G; FAC Ex. 10 at p. 3 ¶ 2.G; FAC Ex. 12 at p. 4 ¶ 2.G.) HAMP-ineligible class members have no basis to demand a HAMP modification.

Plaintiffs' motion does not present any allegation, let alone any facts, as to how those ineligible for a HAMP modification or those who have violated the terms of the purported "TPP agreements" can seek a preliminary injunction barring Chase from foreclosing on properties where they are otherwise in default.  In short, the act of foreclosure is not a wrong that is, even by plaintiffs' own allegations, generally applicable to the putative class.

Moreover, any attempt to ferret out those borrowers who have no legitimate basis to seek an injunction against foreclosures would be rife with precisely the type of case-by-case review that Rule 23(b)(2) is designed to avoid.  For example, one of plaintiffs' primary theories of

consideration — that borrowers abandoned other possible remedies, such as bankruptcy, in reliance on a modification from Chase — would necessarily require a highly individualized inquiry.  In addition, to determine which borrowers were truthful in the information given when seeking TPPs, which ones sent in the proper documentation, or which ones experienced changes in financial circumstances that rendered them HAMP-ineligible would require an impossibly individualized borrower-specific inquiry for each putative class member.

## 2. No Uniform Injunction Could Appropriately Be Entered as to the Class as a Whole.

Plaintiffs also fail the second prong of the Rule 23(b)(2) test.  The preliminary injunction demanded is not one that is appropriately addressed to the class as a whole, for three reasons.

First, the putative class includes borrowers who are not in imminent danger of foreclosure.  For example, ***over 40%*** of the putative class consists of borrowers for whom no determination of HAMP eligibility has yet been made.  (Declaration of Karen L. Shine ("Shine Decl."), filed herewith, ¶ 7.)  As required under the HAMP guidelines (FAC Ex. 2 at p. 15), Chase's policy is to forbear from foreclosure activity concerning such borrowers.  (Declaration of Dennis C. Dorman, filed herewith, ¶ 5.)  None of those borrowers has standing to seek preliminary injunctive relief.  In addition, even among those who have been denied a HAMP modification, many borrowers have modified their loans under other programs, found workouts, refinanced their loans, had a change in circumstances (such as finding a job) allowing them to pay, or negotiate for a suspension of foreclosure proceedings on another basis.  (Shine Decl. ¶ 7.)

Second, even among those borrowers who face imminent foreclosure, many may prefer to proceed with foreclosure.  Each day that a foreclosure is delayed, the borrower accrues debt for taxes and insurance.  (PI Opp'n at Part II.D.)  An injunction barring foreclosures would affirmatively harm borrowers who would prefer to move on and cut their losses.  *See In re*

*Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) ("certification under rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief").

Third, even among borrowers fighting imminent foreclosure, many have no basis to demand a permanent modification.  (*See* Section III.A.1, *supra*.)  In addition, many never signed the TPP "contract" on which plaintiffs base their claims, as that form has been phased out pursuant to Treasury guidance in favor of a letter from the servicer that is not executed by the borrower and does not contain the language on which plaintiffs' Complaint relies.  Those borrowers have no grounds to challenge foreclosure through this litigation.

Rule 23(b)(2) does not provide a basis to issue preliminary injunctive relief as to borrowers who, as described above, would have no basis or desire to seek such relief on their own behalf.  *See Healey v. Murphy*, No. 01-11099-NG, 2008 U.S. Dist. LEXIS 117049, at *20 (D. Mass. Nov. 25, 2008) (refusing to certify a proposed class because it was "overly broad in that it encompasse[d] groups of individuals who [did] not share the same legal claims with respect to [the conduct]"); *Bolin v. Sears Roebuck & Co*., 231 F.3d 970, 978-79 (5th Cir. 2000) (declining to certify a class because only some of proposed class members were properly seeking injunctive relief); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 877 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf.").

> **B.     None of the Named Plaintiffs Has Standing to Seek the Preliminary Injunctive Relief Demanded on Behalf of the Putative Class.**

Plaintiffs also fail to satisfy Rule 23(a)'s requirements of typicality and adequacy. Plaintiffs seek to certify a class "to allow the Court to enter a classwide [preliminary] injunction."  (Pls.' Mem. in Support of Mot. for Class Cert. at 1.)  Yet, none of the plaintiffs

faces any imminent threat of foreclosure, so none has standing to pursue a preliminary injunction on his or her own behalf.  (*See* PI Opp'n, at Part I.)

It is black-letter law that a named plaintiff is not adequate or typical, and therefore cannot represent a class, when seeking classwide relief that he or she could not seek individually.  *See, e.g.*, *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 405 (D. Mass. 2007) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.") (citation omitted).  Courts routinely refuse to certify a class seeking injunctive relief where the named plaintiff has no standing to seek such relief.  *See, e.g.*, *Healey*, 2008 U.S. Dist. LEXIS 117049, at *19-20 (in civil rights case challenging conditions of confinement, denying class certification as to injunctive relief claim because class representative had been released); *DeRosa*, 694 F. Supp. 2d at 102 (the named plaintiff, a former employee, was "an inadequate representative . . . under Rule 23(b)(2) because an injunction is the primary relief requested and, because she would not benefit from such relief, she may not ardently advocate for it").

Plaintiffs cannot escape this conclusion by relying on the Servicemembers Civil Relief Act notice served on Licata on June 24, 2010.  Licata was never in any imminent danger of foreclosure because, prior to any motion by plaintiffs, Chase placed a hold on further foreclosure activity involving her loan.  (PI Opp'n at Part I.)  When Licata moved for a preliminary injunction, Chase assured her that the hold would remain in place at least until the pending motion to dismiss is decided.  (*Id.*)  The First Circuit has squarely held that, where a plaintiff no longer has standing to seek injunctive relief, he or she cannot represent a class seeking such relief.  In *In re New Motor Vehicles Canadian Export Antitrust Litigation*, the court found that "even if the named plaintiffs had standing to seek injunctive relief at some time in the past,

circumstances have changed such that there is no longer a live controversy . . . to bolster plaintiffs' standing to seek injunctive relief." 522 F.3d at 14. The court thus held that the class seeking injunctive relief was "vacated for lack of a live controversy between the parties such as would justify an injunctive remedy." *Id.* at 16; *see also Cruz v. Farquharson*, 252 F.3d 530, 532-33 (1st Cir. 2001) (denying class certification where class sought injunction requiring faster review of visa petitions, because plaintiffs' petitions were processed shortly after suit was filed).

Nor can plaintiffs argue that a more relaxed conception of standing should apply because they seek relief on behalf of a class. Rule 23 is a procedural device, not a mechanism for creating substantive rights. "Rule 23's requirements must be interpreted in keeping with . . . the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *See Amchem*, 521 U.S. at 613. If plaintiffs do not have standing to seek a preliminary injunction individually, they do not magically gain standing because they seek to represent a putative class. *See Cruz*, 252 F.3d at 533 (no class could be certified where "the district court had not certified a class at the time the named plaintiffs' claims became moot").

Plaintiffs may attempt to shoehorn this case into the narrow exception for situations "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). That exception is flatly inapplicable. "In cases — like this one — in which no class has been certified, the exception pertains only if there is some demonstrated probability that the same controversy, involving the same parties, will reoccur." *Cruz*, 252 F.3d at 534. Plaintiffs make no showing that any of them is likely to face a foreclosure that will evade review.

Moreover, even if the situations of putative class members were relevant, plaintiffs have submitted no evidence that their "claims are inherently transitory, or that there is a realistic threat that no trial court will ever have enough time to decide the underlying issues . . . before a named

16

plaintiff's individual claim becomes moot[.]"  *Id.* at 535 (internal citation omitted).  Here, in any

purportedly improper foreclosure, hundreds of thousands of dollars would be at stake, and

putative class members would have every incentive to challenge it.  There is no reason to believe

that the issue will evade review absent class certification.  *See id.* at 535-36 (where plaintiffs

sought to represent persons whose visa petitions were taking a long time to review, such claims

were "susceptible of resolution in the courts" "if diligently pursued by aggrieved parties" and

were therefore "not shown . . . likely to evade meaningful judicial review").

**C.**     **The Limited Information in Chase's Records Already Shows that None of the Named Plaintiffs Is Adequate or Typical.**

Even if plaintiffs could overcome their lack of standing to seek the relief sought by the

putative class, their motion suffers another fatal flaw:  even absent discovery, Chase's records

already show that the named plaintiffs are not adequate or typical.

Three of the named plaintiffs are not even members of the putative class.  It is axiomatic

that a plaintiff cannot represent a class of which he or she is not a member.  *E. Tex. Motor*

*Freight Sys. v. Rodriguez*, 431 U.S. 395, 404-05 (1977).  Here, the putative class is limited to

borrowers who "made the payments identified in Section 2 of the TPP Agreement."  (Mot. for

Class Cert. at 1.)  That is because plaintiffs cannot demand performance from Chase if they

themselves have not performed their obligations under the purported contract.  Mass. Super. Ct.

Civ. Practice Jury Instructions § 13.1.19.  Each of plaintiffs' TPPs mandated both specific

payment amounts and specific deadlines for each of the initial three payments, and stated that

"TIME IS OF THE ESSENCE" as to those deadlines.  (FAC Ex. 8 at p. 10 ¶ 2.A; FAC Exs. 9,

10 & 12 at p. 3 ¶ 2.A.)  The program's very intent was to test whether, during the "trial,"

previously delinquent borrowers could nevertheless make timely payments under modified

terms.  Yet, three of the named plaintiffs failed to make timely payments as required by Section

17

2 of their TPP.  Licata was required to make her second and third payments by October 1, 2009,

and November 1, 2009 (FAC Ex. 10 at p. 3 ¶ 2), but made neither payment until November 4,

after Chase had sent her a letter informing her of her delinquency.  (Declaration of Patricia Lynn

Green ("Green Decl."), filed herewith, ¶ 8, Ex. B at pp. 14-15, Ex. C.)  Durmic was required to

make her first trial payment by July 1, 2009 (FAC Ex. 8, at p. 10 ¶ 2), but did not make that

payment until July 21, 2009.[3]  (Green Decl. ¶ 14, Ex. G at p. 16, Ex. H.)  Rodrigues was required

to make her second trial payment by July 1, 2009 (FAC Ex. 12 at p. 3 ¶ 2), but did not pay until

July 9, 2009.  (Green Decl. ¶ 22, Ex. P at pp. 20-21.)[4]

Moreover, the named plaintiffs are vulnerable to other unique defenses.  For example:

- The Treannies were not eligible for a permanent modification pursuant to HAMP because

  the verified documentation showed significantly different income than stated in their TPP

  application.  The Treasury guidelines provide that, to be HAMP-eligible, the borrower's

  current monthly mortgage payment ratio — that is, the monthly mortgage payment

  divided by the borrower's gross monthly income — must be greater than 31%.  (FAC

  Ex. 2 at pp. 3, 7.)  When seeking to qualify for a TPP, the Treannies stated that their net

  monthly income was $2,875 + $2,780 = $5,655.  (Green Decl. ¶ 19, Ex. L.)  To calculate

  gross income, the servicer is to multiply the net income by 1.25 (FAC Ex. 2 at p. 7),

---

[3] Though Durmic attempted payment on July 1, 2009, she did not pay with certified funds, as required.  (Green Decl. ¶ 14, Ex. G at pp. 18-19, Ex. I; FAC Ex. 7 at p. 3.)  She therefore did not make three compliant TPP payments and is not a class member.  She is also subject to a unique defense not applicable to class members who made their payments in a compliant manner.  *DeRosa*, 694 F. Supp. 2d at 100.

[4] Plaintiffs may argue that Chase waived their failure to pay on time.  Even if true, that would be irrelevant.  Plaintiffs would still not be members of the putative class, and their claims would still require atypical individualized proof not applicable to the class.  *See DeRosa*, 694 F. Supp. 2d at 100.  In any event, plaintiffs' mortgages, incorporated by reference into the TPPs (FAC Exs. 8-10, 12 at p. 2), provide that "Lender may accept any payment . . . insufficient to bring the Loan current, without waiver of any rights . . . ."  (Request for Judicial Notice, filed Aug. 18, 2010, at Exs. 1-2 & 4 at p. 5, Ex. 3 at p. 4 [Dkt. No. 17].)

which would be $7068.75.  The Treannies' monthly mortgage payment was $2,645.55. (Green Decl. ¶ 21, Ex. O.)  That yields a qualifying monthly mortgage payment ratio of 37%.  However, the Treannies' paystubs submitted in the trial period showed a gross monthly income of  $4245.32 + $314.25 + $4333.33 + $418.60 =  $9311.50.  (*Id.* Ex. M at p. 12.)  That yields a monthly mortgage payment ratio 28%, which does not meet the 31% threshold.

- Rodrigues was not HAMP-eligible, because the NPV of modifying her loan was lower than the NPV of proceeding with foreclosure.  Rodrigues was initially qualified for a TPP based on an estimated property value of $345,000.  (*Id.* Ex. T.)  After the TPP was extended, Chase received a Broker Price Opinion showing the property value was in fact $365,000.  (*Id.* Ex. S.)  As a result, the loan failed the NPV test, because the anticipated foreclosure sale price had increased.  Rodrigues was informed by letter that her loan had failed the NPV test, informed of her right to challenge the accuracy of that determination, and provided with the property value reflected in the Broker Price Opinion.  (*Id.* Exs. Q, S.)  Chase has no record of Rodrigues challenging the Broker Price Opinion.  (*Id.* Ex. P at pp. 2-7.)

- Durmic appears to have significantly misstated her income in her application for her mortgage loan.  Durmic's loan application states an income of $5100 per month.  (*Id.* Ex. J.)  Her paystubs, however, show that she made $1323.30 for a two-week period, or less than $2700 per month.  (*Id.* Ex. K.)  Her tax returns show an annual income of $37,892, or $3157.67 per month.  (*Id.*)  That is almost 40% less than stated.

- Durmic and the Treannies have been offered permanent modifications, which Durmic has conditionally accepted and the Treannies have rejected.  (FAC ¶¶ 67, 85.)  As such, they

can hardly claim the same damages, and (in the case of Durmic) do not seek the same injunctive relief, as the putative class.

Each of these circumstances leaves plaintiffs open to unique defenses that are hopelessly mired in their individual circumstances and prevents them from claiming to be typical or adequate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification should be denied.

Dated:  October 1, 2010                    Respectfully submitted,

                                           JPMorgan Chase Bank, N.A.,
                                           By its attorneys

                                           _____
                                           Donn A. Randall (BBO No. 631590)
                                           Matthew A. Kane (BBO No. 666981)
                                           BULKLEY, RICHARDSON AND GELINAS,
                                           LLP
                                           98 North Washington St., Suite 500
                                           PO Box 9750
                                           Boston, Massachusetts  02114-0016
                                           Telephone: (617) 368-2520
                                           Facsimile: (617) 368-2525
                                           drandall@bulkley.com
                                           mkane@bulkley.com

                                           OF COUNSEL:
                                           Michael J. Agoglia (CA SBN 154810)
                                           Wendy M. Garbers (CA SBN 213208)
                                           MORRISON & FOERSTER LLP
                                           425 Market Street
                                           San Francisco, California  94105-2482
                                           Telephone: (415) 268-7000
                                           Facsimile: (415) 268-7522
                                           magoglia@mofo.com
                                           wgarbers@mofo.com

### CERTIFICATE OF SERVICE

I, Donn A. Randall, hereby certify that a true copy of the foregoing document was served upon all counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on October 1, 2010.


 /s/ Donn A. Randall
Donn A. Randall


2893463