IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE, JEAN LICATA AND ARSENIA RODRIGUES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>J.P. MORGAN CHASE BANK, N.A.<br><br>Defendant. | C.A. NO. 1:10-CV-10380-RGS |

**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE EXPERT REPORT OF CHRISTOPHER WYATT**

**I.     INTRODUCTION**

Plaintiffs oppose Chase's Motion to Strike the Expert Report of Christopher Wyatt. The motion perversely attempts to confuse Mr. Wyatt's discussion of the bases for his opinions with the opinions themselves. The fact that Mr. Wyatt cogently summarizes the HAMP guidelines and government reports supporting his opinions does not make the opinions themselves inadmissible. As this Court has noted, the Court is "perfectly capable of distinguishing admissible from inadmissible expert opinion." *Beal v. Blache*, 2005 WL 352861, p. *1, n.2 (D. Mass. 2005). Here, there is nothing inadmissible whatsoever as the factual and legal summaries of supporting materials are not being offered as expert opinion, but rather as background material supporting Mr. Wyatt's opinions. Including background material in an expert report is expressly permitted by the relevant rule and the explanatory Advisory Committee Notes.

In addition, for the reasons set forth below, Mr. Wyatt's opinions are well-grounded in both his uniquely relevant experiences and in material in the public record. There is no reason to strike any portion of his report.

## II. FACTUAL BACKGROUND

Contrary to Chase's position, Mr. Wyatt does not purport to offer legal opinions of any kind. He is not a lawyer. Mr. Wyatt has over 20 years of experience working in the residential mortgage loan servicing industry. Wyatt Report at 2. He has worked for multiple lenders and as a private consultant on mortgage servicing issues. *Id.* Mr. Wyatt has specific experience with servicer implementation of HAMP, having supervised the implementation of HAMP at Litton Loan Servicing, LP, one of the nation's largest loan servicers, where he was responsible for identifying potential operational risks related to the program and where he managed an "elevated call" center to address consumer complaints regarding HAMP. *Id.*

In addition to his general experience in mortgage servicing and his specific experience in implementing HAMP, Mr. Wyatt bases his expert opinion on a careful and thorough review of the HAMP Program Documentation, the Servicer Performance Reports prepared by Treasury and Chase's testimony to the U.S. House of Representatives Committee for Financial Services, regarding its understaffing and lack of adequate processes for handling loan modifications. *Id.* at 1. Furthermore, Mr. Wyatt has personal experience with Chase's inadequate processing of HAMP applications from the outside, through assisting a homeowner seeking a Home Affordable Modification from Chase. *Id.* at 2.

His opinions cover only the following issues:

1. *Whether Chase routinely fails to comply with HAMP and why.* (Mr. Wyatt concludes that Chase has not complied with HAMP requirements because it had inadequate staff who are inadequately trained.)

2. *The likely number of class members in Massachusetts.* (Mr. Wyatt concludes that there are at least 250 class members – a conservative conclusion now confirmed by Chase's recent admission that there are more than 1850 class members. Declaration of Karen Shine, ("Shine Decl.") ¶ 4.)

3. *The consequences to homeowners of Chase's failure to convert TPPs into permanent modifications.* (Mr. Wyatt concludes that homeowners in unconverted TPPs and/or those who receive delayed permanent modifications suffer harm in the form of increased interest obligations, increased default and delinquency charges, loss of valuable credit reporting benefits, and various forms of stressful debt collection and foreclosure activities even if no foreclosure ultimately occurs).

### III. ARGUMENT

**A. Mr. Wyatt's Report Contains Relevant and Admissible Subject Matter, Not "Legal Conclusions"**

A fair assessment of Mr. Wyatt's report reveals that it is not a legal opinion nor does it contain legal testimony. The rules expressly allow expert testimony where "scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence*" Fed. R. Evid. 702 (emphasis added). The Advisory Committee Note to Fed. R. Civ. P. 702 states "[I]t might also be important in some cases for an expert to educate the

factfinder about general principles…" Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments).

The expert opinions and the summary of HAMP requirements offered by Mr. Wyatt are especially appropriate in this case because Chase acknowledges that the HAMP Program Documentation is voluminous and complex. Mem. in Supp. of Def.s Mot. to Dismiss [Dckt 12] at 4 ("On April 6, 2009, Treasury issued its first Supplemental Directive. It has since issued fourteen additional Supplemental Directives, the most recent of which was issued on June 3, 2010."); *Id.* at 3 (The guidelines, *inter alia*, "specify threshold criteria," "enumerate a sequence of steps for servicers to apply to the loans of potentially eligible borrowers" and establish "a process for comparing the net present value ('NPV') of a HAMP modified loan to the NPV of an unmodified loan"). Where an expert has extensive experience in a "highly specialized world," as Mr. Wyatt does, it is appropriate for the Court to give credence to his conclusions regarding the meaning of documents. *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 9 F.Supp.2d 49, 52 (D.Mass. 1998), *aff'd*, 217 F.3d 33 (1st Cir. 2000).

As the Advisory Committee Notes to Rule 702 instruct, "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments).

**B. Mr. Wyatt's Opinion is Based on His Extensive Experience in the Field at Issue and on Reliable Public Information**

Uniquely, Mr. Wyatt's lending industry background makes him an expert in both loan servicing issues and in the implementation of HAMP. See Section II. There is probably no other person in the country with a background similar to Mr. Wyatt's who is willing to step forward to provide expert evidence for Plaintiffs in cases like the one before the Court. That experience alone qualifies him to offer opinions to assist the Court. As the Advisory Committee has noted:

> Nothing in the amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training, or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 contemplates that an expert may be qualified on the basis of experience.

Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments).

Moreover, Chase does not meaningfully assert that the material in the public record that Mr. Wyatt describes as the bases for his opinion – including the HAMP guidelines – are unreliable or outside of the normal purview for expert assistance to the factfinder here. Again, as the Advisory Committee Notes, "The Amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles." Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments). *See Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 358 (D.Mass. 2008) (background information on industry standards and practices are permissible expert testimony). While the general principles are otherwise available in the record, Mr. Wyatt's summary provides a direct connection between the information he relies on and the Opinions he offers. *See Suskind v. Home Depot Corp.*, 2001 WL 92183, at *1 (D. Mass., Jan. 2, 2001) (expert report properly summarizes materials

relied on). Had he not included it, Chase would undoubtedly be arguing that it could not determine the specific basis for Mr. Wyatt's otherwise admissible opinions.

## IV. CONCLUSION

Chase's Motion to Strike the Expert Report of Christopher Wyatt should be denied.

Respectfully submitted,

On behalf of the
Plaintiffs,

By their attorneys,

*/s/ Gary Klein*
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810
Tel: (617) 357-5500
Fax: (617) 357-5030

Stuart Rossman (BBO 430640)
Charles Delbaum (BBO 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th floor
Boston, MA 02110
Tel: (617) 542-8010
Fax: (617) 542-8028

Michael Raabe (BBO 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840
Tel: (978) 686-6900
Fax: (978) 685-2933

Dated: October 26, 2010

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on October 26, 2010.

                                          *s/ Kevin Costello*
                                          Kevin Costello