## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE, JEAN LICATA AND ARSENIA RODRIGUES, on behalf of themselves and all others similarly situated,**<br><br>        **Plaintiffs,**<br>**vs.**<br><br>**J.P. MORGAN CHASE BANK, N.A.**<br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **C.A. NO. 1:10-CV-10380-RGS**<br><br>**Leave to file granted October 26, 2010** |

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

Table Of Authorities ..........................................................................................................ii

I.      INTRODUCTION ..................................................................................................1

II.     CHASE'S FACTUAL PRESENTATION DISTORTS THE IMPACT
        OF ITS LIMITED STAY POLICY. NO GENERAL FORECLOSURE
        STAY IS IN PLACE ..............................................................................................3

        A. Ms. Licata's Facts ......................................................................................3

        B. Facts Relating To Other Plaintiffs And Class Members ...................................3

III.    ARGUMENT ..........................................................................................................5

        A. Chase's Temporary Voluntary Cessation of Ms. Licata's Foreclsoure
           Does Not Render This Controversy Moot .......................................................5

        B. The Preliminary Injunction Requirements Are Met ......................................8

            1. Likelihood of Success ................................................................................8

                a.   The Evidence Presented by Plaintiffs is Sufficient to
                     Support the Motion..............................................................................8

                b.   Plaintiffs are Likely to Succeed in Their Legal Arguments....9

            2. Chase Admits that There is a Presently Existing Harm to at Least
               Half the Class..........................................................................................13

            3. The Balance of Harm Favors Plaintiffs .................................................14

            4. Preliminary Injunctive Relieve Will Serve the Public Interest ..........15

        C. A Bond Is Not Necessary Because Chase Is Adequately Protected...............17

        D. This Court Has Equity Powers to Protect Putative Class Members Even
           If a Class Is Not Certified .........................................................................18

IV.     CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Bowater Inc.*,
    313 F.3d 611 (1st Cir. 2002) ........................................................................... 7

*Advanced Mgmt. Tech., Inc. v. FAA*,
    211 F.3d 633 (D.C. Cir. 2000) ........................................................................ 5

*Coleman v. Block*,
    580 F. Supp. 194 (D.C.N.D. 1984) ........................................................... 1, 13

*Commonwealth v. Fremont Investment & Loan, et al.*,
    No. 07-4373-BLS1, 2008 WL 517279 (Mass. Super. Ct. Feb. 26, 2008) ........ 8

*Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen*,
    679 F.2d 978 (1st Cir. 1982) .......................................................................... 17

*Farris v. Field*,
    No. 09-ADMS-1002, 2009 WL 4378859 (Mass. App. Div. Nov. 25, 2009) ................. 12

*Freeman v. Hayek*,
    635 F.Supp. 178 (D. Minn. 1986) .................................................................. 18

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000) ......................................................................................... 6

*Giorgi v. Doody*,
    537 F. Supp. 1251 (D. Mass. 1982) ............................................................... 19

*Herman v. Home Depot*,
    No. 1345, 2001 WL 705725 (Mass. App. Div. June 19, 2001) ...................... 18

*Howe v. Varity Corp.*,
    No. 88-1598-E, 1989 WL 95595 (S.D. Iowa July 14, 1989) ......................... 18

*Lockhart v. Attorney General*,
    390 Mass. 780 (1984) ....................................................................................... 7

*Metro-Goldwyn Mayer, Inc. v. 007 Safety Products, Inc.*,
    183 F.3d 10 (1st Cir. 1999) .............................................................................. 6

*Monavie, LLC v. Quixtar Inc.*,
    No. 2:08-cv-0204-BSJ, 2009 WL 3584331(D. Utah Oct. 26, 2009) ............. 18

*Morrison v. Heckler*,
    602 F. Supp. 1482 (D. Minn.1984) .................................................................... 19

*Schorr v. Countrywide Home Loans, Inc.*,
    No. S10Q019, 2010 WL 2718993 (Ga. July 12, 2010) ................................... 13

**Other Authorities**

Newberg On Class Actions § 9.45 (4th ed. 2002 and 2010 supp.) ....................................... 18

Restatement (Second) Contracts § 205 ................................................................................ 11

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... 1

## I.   INTRODUCTION

Chase now acknowledges that 1,845 Massachusetts homeowners were promised permanent loan modifications but did not get them.[1] Moreover, it admits that at least half of these 1,845 homeowners are at risk of foreclosure absent injunctive relief, because Chase's voluntary foreclosure stay policies offer them no protection.[2]  Chase essentially concedes that these families could, and in many cases would, lose their homes before the Court can address this case on the merits.  Nevertheless, Chase argues that the Court has no power to preserve the *status quo pendente lite* by temporarily staying these foreclosures.

Chase's arguments are wrong on both the law and the equities. Temporary voluntary cessation of an action involving one Plaintiff does not moot a request for injunctive relief. This is especially true when other Plaintiffs are not similarly protected. Chase incorrectly assumes that the Court cannot consider the effect of the dispute on other class members, particularly when class certification is proper under Fed. R. Civ. P. 23.[3]

Chase made a promise to each Plaintiff and to the other homeowners they seek to represent.  The very first sentence of the standard TPP Agreement provides:

---

[1] Declaration of Karen Shine, ("Shine Decl.") ¶4.

[2] Declaration of Chad J. Prelog, ("Prelog Decl.") ¶6; Opposition to Jean Licata's Motion for Preliminary Injunction ("Opposition"), p. 1 ("Chase has also confirmed that, with respect to nearly half of the putative class on whose behalf this relief is sought, Chase's policy is to stop any foreclosure from occurring until the borrower has been determined ineligible for a permanent loan modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP")").

[3] For example, another federal District Court simultaneously certified a class and issued injunctive relief to stop foreclosures while the litigants were adjudicating their rights under a federal government program. In *Coleman v. Block*, 562 F. Supp. 1353,1356-1363 (D.C.N.D. 1983), the Court issued injunctive relief to stop Farmers Home Administration ("FmHA") officials from taking foreclosure action on North Dakota farmers while they were challenging the FmHA's refusals of their loan deferment applications. The injunction was later expanded to a national class.  *Coleman v. Block*, 580 F.Supp. 192 (D.C.N.D. 1983).

> If I am in compliance with this Trial Period Plan… then the Lender will provide me with a Home Affordable Modification Agreement.

First Amended Complaint, ("FAC"), Ex. 10, p. 1.  Chase then failed to deliver on this promise despite compliance by each Plaintiff and the members of the putative class (as defined). For the affected families to lose their homes, despite Chase's promise, would be tragic and unnecessary, particularly in a market already flooded with foreclosed properties.[4] For Chase, placing a hold on several hundred foreclosures is a routine business practice[5] and, as explained in its most recently filed Annual Report, may actually *save* it money.[6]  For the reasons discussed below and in Plaintiffs' opening brief, all of the requirements for preliminary injunctive relief are met.

Finally, Chase's assertions concerning the impact of a limited foreclosure stay on its bottom line are false.  Even if they were true, however, placing these economic concerns on the same level as families' need to keep their roof over their heads, when those families can afford payments to Chase under a promised agreement to modify their loan terms, is inconsistent with any notion of the equities properly before the Court.  Preliminary injunctive relief should therefore be granted, subject to the requirement that those receiving its benefits make monthly payments in the amount under which they qualified for a TPP.

---

[4] Jenifer B. McKim, *Mass. Foreclosures Up Nearly 27%*, Boston Globe, Oct. 22, 2010, *available at* http://www.boston.com/business/articles/2010/10/22/mass_foreclosures_up_nearly_27_perc ent/ (last viewed October 26, 2010).

[5] *See* Declaration of Dennis C. Dorman, ("Dorman Decl.") ¶¶5-10.

[6] "[Chase's] loss-mitigation programs [including HAMP] are intended to minimize economic loss to [Chase], while providing alternatives to foreclosure." JPMorgan Chase & Co., Annual Report (Form 10-K), at 94 (Feb. 24, 2010).

## II.   CHASE'S FACTUAL PRESENTATION DISTORTS THE IMPACT OF ITS LIMITED STAY POLICY. NO GENERAL FORECLOSURE STAY IS IN PLACE

### A.   Ms. Licata's Facts

Chase incorrectly argues that its voluntary stay of Ms. Licata's foreclosure "moots" the controversy requiring injunctive relief.  While this is wrong on the law for the reasons discussed below, it is also wrong on the facts.  At the time Plaintiffs filed their Amended Complaint on June 10, 2010 adding Ms. Licata as a Plaintiff, Chase was in the process of foreclosing on Ms. Licata's mortgage after making a contractually invalid decision denying her a permanent HAMP loan modification. Three weeks after Ms. Licata joined Plaintiffs' complaint, Chase - without notifying Ms. Licata or her attorneys - purportedly put a hold on Ms. Licata's foreclosure proceedings. But almost a week after the June 28, 2010 "foreclosure hold," Ms. Licata was served with a Servicemembers Civil Relief Act notice - a prerequisite step in Massachusetts' foreclosure process.[7] During the parties' telephone conference to discuss Chase's positions on the motions now before the Court, Chase first informed Plaintiffs' counsel that it had put a *temporary* voluntary hold on Ms. Licata's foreclosure. Nothing prevents Chase from withdrawing this voluntary hold at any time.

### B.   Facts Relating To Other Plaintiffs And Class Members

Chase has not placed foreclosure holds, voluntary or otherwise, on all of the putative class members' mortgages. Opposition, p. 6 (explaining that only half of the likely class members' foreclosures have been put on hold). Nor does the voluntary stay on Ms. Licata's foreclosure protect other Plaintiffs.

---

[7] This litigation activity calls into question whether the voluntary "hold" has any meaning at all.

Chase's policy is to begin foreclosure proceedings on borrowers who it has unilaterally deemed to be ineligible for permanent HAMP modifications. Dorman Decl*., at* ¶8 (describing policy to refer properties to foreclosure whenever it makes a decision that the borrower is not HAMP eligible). Plaintiffs, including Ms. Licata, the Treannies and Ms. Rodrigues, have submitted declarations herewith that show that Chase's eligibility decisions are consistent with contractual promises. Declarations of Donald Treannie and Nadine Cohen (on behalf of Ms. Rodrigues), submitted as Exhibits 5 and 4, respectively, to Plaintiffs' Reply in Support of "Provisional" Motion for Class Certification ("Class Cert. Reply"). These Plaintiffs have been in compliance with their contractual obligations, but have nevertheless been "denied" permanent modifications.  Perhaps, even more importantly though, the form contract at issue does not allow Chase validly to terminate TPPs after the "Modification Effective Date"  -- a date which is contractually defined as "the first day of the month following the month in which the last Trial Plan Payment is due" – provided the borrower has complied with the TPP through that date (*e.g*., FAC, Ex. 10 at 2).  The contract itself stresses that "TIME IS OF THE ESSENCE." *Id*. (emphasis in original).[8] Each class member whose TPP has been terminated and is subject to foreclosure, was not timely terminated consistent with these contractual requirements. Foreclosure proceedings against them are therefore improper and Chase acknowledges that no foreclosure stay is in place.

---

[8] Chase is, of course, the drafter of these agreements such that construction, if necessary, runs against Chase.

4

### III.   ARGUMENT

**A.   CHASE'S TEMPORARY VOLUNTARY CESSATION OF MS. LICATA'S FORECLOSURE DOES NOT RENDER THIS CONTROVERSY MOOT**

Chase argues that none of the Plaintiffs has "standing" to pursue preliminary injunctive relief because they put a temporary hold on Ms. Licata's foreclosure. Opposition, p. 14-15.  As an initial matter, Chase's Opposition conflates the standing and mootness doctrines. *Advanced Mgmt. Tech., Inc. v. FAA,* 211 F.3d 633, 636 (D.C. Cir. 2000)  (noting that "[s]tanding is assessed at the time the action commences," whereas mootness concerns whether "a judiciable controversy existed but no longer remains") (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)) (internal quotation marks omitted). Ms. Licata indisputably has standing to pursue this action as she has not been granted a permanent HAMP modification.  She also has standing to pursue a preliminary injunction because the foreclosure process was underway when she filed her amended complaint and is only temporarily on hold. Properly articulated, Chase's argument is that Plaintiffs' motions are moot because they have temporarily and voluntarily stayed the foreclosure on Ms. Licata's property.  This position rings hollow for several reasons.

First, Chase has not promised that it will continue the freeze on Ms. Licata's foreclosure beyond this Court's order on the pending motion to dismiss regardless of whether the motion is denied.  Opposition, p. 15.  Thus, even by the terms of its voluntary, unenforceable temporary cessation of foreclosure activity, Chase remains free to reinstitute foreclosure proceedings following the motion to dismiss stage of this litigation.  Further, Chase has not promised that it will stop pending and future foreclosures of Plaintiffs and

putative class members, who have been or will be subject to Chase's contractually invalid

HAMP denials.[9] Rather, Chase acknowledges that many of these borrowers will be subject

to foreclosure proceedings during the litigation. Dorman Decl., at ¶ 8

      But even without considering the partial nature of Chase's non-binding promise to

Ms. Licata, this Court should reject Chase's mootness argument.  "It is well settled that 'a

defendant's voluntary cessation of a challenged practice does not deprive a federal court of

its power to determine the legality of the practice.'" *Friends of the Earth, Inc.,* 528 U.S. at

189, *quoting City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982). "[I]f it

did, the courts would be compelled to leave '[t]he defendant ... free to return to his old

ways.'"  *Id.*  Instead, such a case is moot only if the defendant meets the "heavy burden" of

persuading the court that it is "absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur."  *Id.*  So, where the First Circuit reviewed an injunction

against a defendant that had voluntarily ceased the offending activity prior to the motion to

enjoin, it found that burden had not been met.  *Metro-Goldwyn Mayer, Inc. v. 007 Safety*

*Products, Inc.*, 183 F.3d 10, 15 (1st Cir. 1999) ("*MGM*") ("'The burden of demonstrating

_____

[9] The most recently publicized statistics on Chase's performance under HAMP indicate that many more Chase borrowers are or will be subject to HAMP denials and at risk of foreclosure. The U.S. Department of the Treasury's most recent report on the Chase's implementation of the HAMP program reported that, "[t]hrough September 2010, Chase converted only 33% of eligible trials to permanent modifications at an average trial length of 7.7 months.  "Making Home Affordable Program: Service Performance Report Through September 2010," U.S. Department of the Treasury, at 5, *available at* http://www.financialstability.gov/docs/Sept%20MHA%20Public%202010.pdf (last visited October 26, 2010). Chase also had an estimated 7,868 loans in active trials that were initiated at least six months ago ("aged").  *Id.* Through August 2010, a total of 112,816 Chase borrowers had canceled HAMP trial modifications.  Of these, 18,536 had foreclosure proceedings start.  *Id.* at 6. In addition, the report estimates that through September, Chase took an average of 40 days to resolve third-party escalations (15 days above the HAMP Solutions Center target).  *Id.* at 9.

mootness is a 'heavy one,'' and it fell to [defendant] to demonstrate that its past attempts to [repeat the disputed conduct] likely would not recur.").  Here, as in *MGM*, Chase has shown nothing to guarantee that it will not unfreeze its pending foreclosure proceedings against Ms. Licata – indeed, its promise extends only to the motion to dismiss stage -- nor as to other class members.

The First Circuit has emphasized that for cases where the likelihood of recurrence is neither particularly high nor particularly low, the trial court is free to take into account other considerations, including equitable factors, that "bear[] on whether a case that began with a concrete controversy should be dismissed when the conduct ceases." *Adams v. Bowater Inc.*, 313 F.3d 611, 614 (1st Cir. 2002) ("*Adams*"). [10] As with the defendant in *Adams*, Chase here is unwilling to admit that it was wrong to institute foreclosure proceedings against Ms. Licata in the first place.  "[W]here a defendant is unwilling to give any assurance that the conduct will not be repeated, a natural suspicion is provoked that recurrence may well be a realistic possibility." *Adams,* 313 F.3d at 615. Once homes are improperly foreclosed with the resulting displacement of families, the *status quo* at issue can never be restored.

---

[10] According to *Adams*, these other considerations include whether the alleged harm is capable of repetition yet evading review.  *Adams*, 313 F.3d at 614 n.1, *citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 186 n. 9 (1982).  In Massachusetts, this exception to the mootness doctrine applies where a case presents an issue of importance to the public, where the parties are capable of making full argument to the court, and where the issue is likely to recur in similar factual circumstances, yet temporally limited such that it will usually be resolved during the pendency of the litigation. *Lockhart v. Attorney General*, 390 Mass. 780, 782-83 (1984).  This is just such a case. Chase's systemic broken promises to borrowers struggling with their mortgage payments presents an issue of profound public importance, especially in the midst of a national foreclosure crisis.

**B.      THE PRELIMINARY INJUNCTION REQUIREMENTS ARE MET**

   **1.      Likelihood of Success**

      ***a.      The Evidence Presented by Plaintiffs is Sufficient to Support
            The Motion***

The Expert Report of Christopher Wyatt [Docket 23-1] ("Wyatt Report") is based on

his extensive experience and research and is entitled to significant weight.  Chase's

arguments for striking the Wyatt Report are without merit and are addressed in Plaintiffs'

Opposition to Defendant's Motion to Strike Expert Report of Christopher Wyatt, submitted

separately, and will therefore not be reiterated here.

      Chase similarly discounts the value of Ms. Licata's declaration, [Docket No. 22],

which details Ms. Licata's extensive and frustrating efforts to comply with Chase's

instructions, her payment history, her distress at being left in limbo and ultimately denied

and her current risk of foreclosure. There is a reason that Ms. Licata's Declaration recites the

same essential facts as the First Amended Complaint; both represent an accurate summary of

her experiences with Chase and the relevant evidence. Additional declarations that go to the

merits have been submitted by counsel for Ms. Rodrigues and the Treannie plaintiffs.

Exhibits 4 and 5 to the Class Cert. Reply, respectively. Ms. Licata has also submitted a

second declaration, attached as Exhibit 3 to the Class Cert. Reply.

      Because a preliminary injunction is usually decided at an early stage of a case, as

here, "in finding the facts on a motion for preliminary injunction" the Court "must play the

cards it is dealt, which may be a far more modest deck than it may be dealt at trial, after

discovery has been completed." *Commonwealth  v. Fremont Investment & Loan, et al*., No.

07-4373-BLS1, 2008 WL 517279, at *3 (Mass. Super. Ct. Feb. 26, 2008) (internal

quotations omitted).  Preliminary findings of fact may (and often must) be "based on the affidavits and attached exhibits furnished by the parties, as well as reasonable inferences from that evidence."  *Id.*

Acknowledging the trade-off between moving quickly to protect the homes of Plaintiffs and class members and the desirability of developing the evidentiary record, Plaintiffs' Counsel wrote a letter to Chase's Counsel requesting reciprocal discovery several weeks ago, but received a negative response.  Class Cert. Reply, Section III(A).

### b.    *Plaintiffs are Likely to Succeed in Their Legal Arguments*

The Parties' arguments on the merits have been extensively briefed already.  This brief will only respond to the specific points newly raised in Chase's Opposition.

Chase provides a new twist to its argument that it has essentially unlimited time and discretion to decide whether to offer borrowers a Home Affordable Modification, and that the TPP Agreement is therefore too vague to be a contract.  This time, Chase insinuates (but does not actually claim) that an NPV test might not have been run on Ms. Licata's loan before she was given a TPP Agreement.  Opposition, p. 9.

In the opinion of Plaintiffs' expert, the HAMP guidelines require that an NPV test be run before a TPP Agreement is offered to the borrower (it must also be run before a permanent Home Affordable Modification is offered, but if the borrower's income was correctly reported, as Ms. Licata's was, the result will not change).  However, even if Chase did not run an NPV test prior to approving Ms. Licata for a TPP Agreement, the nature of the TPP Agreement and Chase's responsibilities under it are unchanged; the TPP Agreement is still a contract with definite terms, and Chase is still required to perform according to those terms, within the time period specified in the Agreement.  In another context, Chase

itself has acknowledged that the TPP Agreements are contracts. "[B]orrowers must make at least three payments under the <u>revised contractual terms during a trial period</u> and be successfully re-underwritten with income verification before their loan can be permanently modified." JPMorgan Chase & Co., Annual Report (Form 10-K), at 202-203 (Dec. 31, 2009) (emphasis added).

Chase cherry picks language from the TPP Agreement to try to create the impression that there are other requirements or qualifications on the promise of a Home Affordable Modification made in the TPP Agreement. *See* Opposition, p. 10. However, reading the Agreement as a whole reveals that the only conditions on the offer of a permanent Home Affordable Modification are the making of three payments, pursuant to Section 1 and the truth of the borrower's representations in Section 2.

Furthermore, the TPP Agreement clearly specifies the time frame in which the borrower and Chase must perform. Chase does not have unlimited time to evaluate and re-evaluate the borrower. [11]  The TPP Agreement provides:

> F. If prior to the Modification Effective Date, * * *  (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.

FAC Ex. 12 [Docket 4-12] at 2.  Chase must evaluate the truth of the borrower's representations and send the Modification Agreement *before* the Modification Effective Date.[12]

---

[11] Chase's receipt of incentive payments from Treasury may depend on the borrower meeting requirements other than those specified in the TPP Agreement but, to put it bluntly, that is Chase's problem.

Chase's other arguments regarding the breach of contract claim once again ignore the definition of consideration (which is present when there is any legal detriment) by focusing on the amount of Ms. Licata's monthly payments to the exclusion of all other requirements and financial consequences.  Chase likewise ignores applicable law in questioning the reality of the damages incurred by Ms. Licata and other class members in favor of a bare assertion that over a year of uncertainty, worsening financial distress and risk of preventable foreclosure is nothing to worry about, if it comes with temporarily lower payments.  Not only is this patently false,[13] it is well-settled law that every breach of contract necessarily involves damages to the non-breaching party, even if they are only nominal.  *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss [Docket 14] at 14.

In addition to minimizing the damage suffered by Ms. Licata (and other class members), Chase argues that she could have avoided harm by paying her full mortgage payments during the trial period.  This laughable argument perfectly illustrates the Catch-22 that Chase would impose on borrowers, if its view of the non-binding nature of the TPP Agreement is allowed to prevail.  Ms. Licata's TPP Agreement specifies that she "will pay the Lender the amount set forth below ('Trial Period Payment')... of U.S. $1,242.53." FAC Ex. 12 [Docket 4-12] at 2.  It further requires Ms. Licata to make a representation – under

---

[12] To the extent that Chase fails to timely send a Modification Agreement without justification (i.e. in the absence of a breach on the part of the borrower) and uses that as an excuse later to deny the borrower or to unilaterally extend the time period in which Chase may demand additional documentation and re-evaluate the borrower's eligibility, Chase is violating both the "TIME IS OF THE ESSENCE" provision of the contract and the covenant of good faith and fair dealing.  The covenant is violated where there is "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Restatement (Second) Contracts* §205.
[13] *See* Wyatt Report at p. 17-18.

penalty of perjury – that she is unable to afford her regular mortgage payments.  *Id.* at 1.

Under Chase's view, she can have *no* assurance that her compliance with the TPP

Agreement's terms will actually result in Home Affordable Modification (since she would

have no way of enforcing the promise), and she should therefore hedge her bets by paying

more than instructed.  However, had Ms. Licata made full monthly payments, she would

have been in violation of the terms of the TPP Agreement, thereby guaranteeing that she

would not receive a permanent modification.

 Even if Chase were correct that one or more of Ms. Licata's TPP payments was not

made by the first of the month, such a breach is so small as to be immaterial.  *See Farris v.*

*Field*, No. 09-ADMS-1002, 2009 WL 4378859 at *3 (Mass. App. Div. Nov. 25, 2009) ("[I]f

a party breaches a contract in a non-material or nonessential way, the injured party may be

entitled ... to bring an action to the damages that he or she alleges to have suffered, but the

party may not stop performing his obligations under the ... contract or agreement between

the parties.")  In any event, strict timeliness was waived, if not by Chase's acceptance of the

payments, then certainly by Chase's failure to raise timeliness of payments as a reason for

denying Ms. Licata a Home Affordable Modification, before the Modification Effective

Date.  *See* FAC Ex. 13 [Docket 4-13].

 Chase's arguments on the merits of Ms. Licata's other legal claims, including

promissory estoppel, breach of the covenant of good faith and fair dealing and violation of

M.G.L. c 93A[14] raise no new issues.  Plaintiffs rely on their previous briefing on these

issues.

_____

[14] Ms. Licata was a member of the class encompassed in the demand letter sent by Ramiza

### 2.    Chase Admits that There is a Presently Existing Harm to at Least Half the Class

As explained in Section, III.A., *supra*, Ms. Licata's standing was not altered by Chase's temporary voluntary cessation of her foreclosure proceeding. Absent protection from this Court, she is still at risk of foreclosure.  Equally importantly, even though Chase has placed a temporary hold on Ms. Licata's foreclosure, it admits that is has not done so for at least half of the members of the putative class who are at imminent risk of foreclosure. Chase will continue to foreclose on borrowers to whom it denies permanent HAMP modifications throughout the litigation. *See* Dorman Decl., ¶5. This means that each month that goes by during this litigation will inevitably result in class members who have complied with all the terms of their TPP Agreements improperly being found ineligible by Chase and referred for foreclosure, as was the case with Ms. Licata. Under Chase's view, such homeowners should each be required to bring seek injunctive relief upon their being shifted into that category. Many of these individuals, at least until notice issues under Rule 23(c)(2), will not even know that an action is pending which seeks to protect their rights. *See Coleman v. Block,* 580 F. Supp. 194, 202-203 (D.C.N.D. 1984) (finding that class members were entitled to receive notice and a chance to be heard and to present evidence before the FmHA liquidated their mortgages).

---

Durmic on March 4, 2010 - before Ms. Licata was added to the amended complaint as a named Plaintiff - and therefore has met the jurisdictional requirements for a 93A claim. *Accord Schorr v. Countrywide Home Loans, Inc.*, No. S10Q019, 2010 WL 2718993 at *2-*3 (Ga. July 12, 2010) (citing *Baldassari v. Pub. Fin. Trust*, 369 Mass. 33, 43 (1975) and reciting the "general rule allowing the named plaintiffs in a class action to satisfy preconditions for suit on behalf of the entire class").

### 3.      The Balance of Harm Favors Plaintiffs

The economic harm Chase claims it would suffer should the Court issue preliminary injunctive relief is based on hearsay and speculation. The monetary losses described by Mr. Prelog in his declaration are completely miscalculated because he assumes borrowers will stop paying their mortgage loans, property taxes and homeowners insurance. Prelog Decl., ¶¶4, 10. Plaintiffs have not asked the Court to relieve those who gain the protection of the preliminary injunction from the obligation to make monthly payments as required by their TPP Agreements. The preliminary injunctive relief can be conditioned upon continued payments, thus maintaining the *status quo pendente lite*.

Ironically, almost all of the costs Mr. Prelog cites are costs *related to foreclosure proceedings*, which Chase would not incur if it stopped the foreclosures. Prelog Decl., ¶7. (identifying property inspections, foreclosure-related attorneys' fees and publication costs).[15] The underlying purpose of the preliminary injunctive relief is to allow borrowers to stay on track with their monthly mortgage obligations as set forth in their TPP Agreements while avoiding foreclosure, under which circumstances Chase would not incur foreclosure-related fees.

Moreover, Chase's claim that it will suffer "significant losses" if it is required to stay the relatively small number of foreclosure proceedings at issue here is entirely disingenuous. Chase is "one of the largest banking institutions in the United States [], with $2.0 trillion in assets, $165.4 billion in stockholders' equity and operations in more than 60 countries…".[16]

---

[15] Mr. Prelog does not quantify these costs or consider that foreclosure-related costs are usually passed through to and paid by the borrower.
[16] *Id*., at 1.

It recently issued a press release announcing that it earned $4.4 billion in net income and revenue of $24.3 billion for the third-quarter of 2010.[17] These earnings were reported at the same time that Chase had voluntarily suspended approximately 56,000 foreclosures (more than 55 times the number of foreclosure at issue here) across 23 states where its foreclosure paperwork is under review.[18]

Finally, Chase has offered no proof that the housing market will further decline, causing its underlying collateral to depreciate in value. Based on the information Mr. Prelog provides in his declaration relating to foreclosure costs, coupled with the express purpose of HAMP to benefit both the mortgagee and the mortgagor, foreclosure on the group of borrowers who can afford to make meaningful mortgage payments is more expensive than loss mitigation. Modifying loans, rather than foreclosing on mortgages, would allow Chase to mitigate its losses associated with the foreclosures Plaintiffs seek to enjoin. JPMorgan Chase & Co., Annual Report (Form 10-K), at 94 (Feb. 24, 2010).

### 4.      Preliminary Injunctive Relief Will Serve the Public Interest

The need for a preliminary injunction is further supported by recent foreclosure activity around the country and evidence of servicers' sloppiness and inattention to detail.[19]

---

[17] Press Release, JP Morgan Chase & Co. (Oct. 13, 2010), *available at* http://www.jpmorganchase.com/corporate/Home/home.htm (last viewed on October 20, 2010).

[18] David Streitfeld, *Foreclosures Slow as Document Flaws Emerge*, N.Y. Times, Sept. 30, 2010, *available at* http://www.nytimes.com/2010/10/01/business/01mortgage.html?scp=8&sq=Chase%20forec losure%2023&st=cse (last viewed on October 20, 2010).

[19] *See* David Streitfeld and Gretchen Morgenson, *Foreclosure Furor Rises; Many Call for a Freeze*, N.Y. Times, October 5, 2010, *available at* http://www.nytimes.com/2010/10/06/business/06mortgage.html?_r=1 (last visited October 22, 2010); Michelle Singletary, *Foreclosure fiasco reveals basic problems with mortgage*

15

There is clearly a strong public interest in preventing unnecessary foreclosures. Massachusetts Attorney General Martha Coakley is among other attorneys general across the country who are supporting the banks' decisions to halt their foreclosures while reviewing their foreclosure processes.  According to Coakley, there is a strong public interest in temporarily reviewing faulty foreclosure processes now, to prevent any mistakes, rather than "to try to undo the process several years from now." [20] This is directly correlated to the strong public interest that exists in granting the preliminary injunction for Ms. Licata and the class in this case.

Chase also attempts to argue that the injunction would discourage lenders from participating in HAMP, thereby undermining the program.  (Opposition at 18).  However Chase ignores that granting the injunctive relief will reinforce what has been explained as the key to the success of its sustainability - converting trial plans into permanent loan modifications.  *See September Oversight Report: Assessing the TARP on the Eve of its Expiration*, Congressional Oversight Panel at 49 (September 16, 2010), http://cop.senate.gov/documents/cop-091610-report.pdf ("…the most important measure of HAMP's effectiveness is the number of sustainable permanent modifications…").

---

*industry*, The Boston Globe, October 17, 2010, *available at* http://www.boston.com/business/personalfinance/articles/2010/10/17/foreclosure_fiasco_reveals_basic_problems_with_mortgage_industry/ (last visited October 22, 2010)(Bank of America, JP Morgan Chase, and GMAC  Mortgage have halted foreclosures while reviewing its foreclosure procedures).

[20] Todd Wallack, *No quick fix: Bank may need weeks to untangle foreclosure mess*, The Boston Globe, October 15, 2010.

## C.    A BOND IS NOT NECESSARY BECAUSE CHASE IS ADEQUATELY PROTECTED

The purported monetary losses Chase claims it would suffer if preliminary injunctive relief were granted are all based on an incorrect assumption that Plaintiffs and class members will not make monthly TPP payments. The Court may condition the preliminary injunctive relief on Plaintiffs and class members making their TPP payments.[21] Chase also has security in the underlying collateral for Plaintiffs' mortgages. Under these circumstances, Chase would be adequately protected should the Court issue the preliminary injunction. Moreover, should the Court issue the injunction, the Court may require that notice be sent to those effected that advises them of the need to make payments consistent with their TPP payments as a condition of receiving injunctive relief.[22]

Even if Chase were not fully protected from monetary losses, the Court may and should use its discretion to waive any bond requirement for this case. The Court can consider the financial ability of Plaintiffs to post a bond and the severity of the financial hardship that a bond might cause. *Crowley v. Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen*, 679 F.2d 978, 1000 (1st Cir. 1982)("...at least in noncommercial cases, the court should consider the possible loss to the enjoined

---

[21] Ms. Licata has not engaged in misconduct by ceasing her mortgage payments after Chase ignored her requests for information about her payment obligations for months following her successful completion of her TPP Agreement then improperly denied her a permanent modification. The uncertainty attendant to improper denial of a permanent modification cannot be understated when viewed from the perspective of an unsophisticated homeowner. Moreover, Ms. Licata tirelessly attempted to get information from Chase about the status of her modification which, unreasonably, Chase could not and did not provide. Second Declaration of Jean Licata, ¶¶ 10-11, attached to the Class Cert. Reply as Exhibit 3.
[22] The Court can require that notice be given to class members of the condition of ongoing TPP payments in the notice required under Rule 23(c)(2).

party together with the hardship that a bond requirement would impose on the applicant...[a] bond requirement would have a greater adverse effect where the applicant is an individual and the enjoined party an institution that otherwise has some control over the applicant than where both parties are individuals or institutions."); *Coleman*, 562 F. Supp. at 1368 (waiving bond requirement due to the plaintiffs' indigency); *see also*, *Herman v. Home Depot*, No. 1345, 2001 WL 705725, at *2 (Mass. App. Div. June 19, 2001) (a court need not require a party obtaining a preliminary injunction to furnish a cost bond).

The expense associated with a bond of nearly 80 million dollars would guarantee that borrowers will default on their loans and lose their homes to foreclosure. This would undermine the purpose of the preliminary injunctive relief they seek.

### D.    THIS COURT HAS EQUITY POWERS TO PROTECT PUTATIVE CLASS MEMBERS EVEN IF A CLASS IS NOT CERTIFIED

"The court may... award a broad preliminary injunction, without a formal class ruling, under its general equity powers."  Newberg On Class Actions § 9.45 at 413-14 (4th ed. 2002 and 2010 supp.) Thus in *Monavie, LLC v. Quixtar Inc.*, No. 2:08-cv-0204-BSJ, 2009 WL 3584331(D. Utah Oct. 26, 2009), for example, the court granted preliminary injunctive relief to an uncertified class, temporarily enjoining enforcement of defendant's arbitration agreement. "It is well-settled that a court may 'award appropriate class-wide injunctive relief prior to a formal ruling on the class certification issue based upon either a conditional certification of the class or its general equity powers.'" *Howe v. Varity Corp.*, No. 88-1598-E, 1989 WL 95595, at *15 (S.D. Iowa July 14, 1989) (citing *Thomas v. Johnston*, 557 F. Supp. 879, 916 n. 29 (W.D.Texas 1983); *Freeman v. Hayek*, 635 F.Supp. 178, 180 (D. Minn. 1986) (preliminary injunction issued nine months prior to certification of

18

class); *Morrison v. Heckler*, 602 F. Supp. 1482, 1484 (D. Minn. 1984), aff'd 787 F.2d 1285 (8th Cir.1986) (court preliminarily certified class and issued preliminary injunction)). Similarly, in *Giorgi v. Doody*, 537 F. Supp. 1251, 1254 (D. Mass. 1982), this court granted an injunction to prevent the destruction of the files of the purported class to prevent irreparable injury.  Surely it has the power to do likewise to prevent the loss of homes *pendente lite* in this case.

## IV.    CONCLUSION

For these reasons as well as those stated in other papers of record, the Court should issue the preliminary injunction that Plaintiffs request.


Dated: October 27, 2010

Respectfully submitted,
On behalf of the Plaintiffs,
By their attorneys,

*/s/ Gary Klein*
Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Tel:  (617) 357-5500
Fax:  (617) 357-5030

Stuart Rossman (BBO 430640)
Charles Delbaum (BBO 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th floor
Boston, MA 02110
Tel: (617) 542-8010
Fax: (617) 542-8028

Michael Raabe (BBO 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840
Tel:  (978) 686-6900
Fax:  (978) 685-2933

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on October 27, 2010.

_s/ Kevin Costello_
Kevin Costello