# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE, JEAN LICATA, AND ARSENIA RODRIGUES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>J.P. MORGAN CHASE BANK, NA,<br><br>    Defendant. | Civil Action No. 1:10-CV-10380-RGS<br><br>**Leave to File Granted on<br>November 8, 2010** |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO
STRIKE EXPERT REPORT OF CHRISTOPHER WYATT**

Plaintiffs' Opposition to defendant JPMorgan Chase Bank, N.A.'s ("Chase's") Motion to Strike the Expert Report of Christopher Wyatt (Pls' Opp'n (Dkt. 40)) fails to demonstrate why the Court should admit Wyatt's legal conclusions about Chase's obligations under the Home Affordable Modification Program ("HAMP") and the meaning of the Trial Period Plan ("TPP") letters.  Nor does it explain why Wyatt qualifies as an expert on HAMP, Chase's inner workings, or the impact on homeowners who do not have their loans modified under HAMP.

### I. PLAINTIFFS' ARGUMENT THAT THE WYATT REPORT DOES NOT PRESENT INADMISSIBLE LEGAL CONCLUSIONS IS UNCONVINCING.

Plaintiffs attempt to salvage the Wyatt Report from the realm of inadmissibility by characterizing most of its content as "background material," as opposed to Wyatt's legal conclusions.  (Pls' Opp'n at 1.)  Yet plaintiffs present no authority in support of the proposition that otherwise inadmissible legal conclusions proffered by a so-called expert become admissible if dressed up as "background material."

Moreover, plaintiffs' argument is unavailing because the Court should not rely on Wyatt to explain such "background material," which is comprised of regulatory guidelines and congressional records, and which the Court is well-equipped to interpret without "expert" assistance.  Plaintiffs ague that Wyatt's opinions and summaries are "especially appropriate" because Treasury's directives on HAMP are "voluminous and complex," therefore making it "appropriate for the Court to give credence to [Wyatt's] conclusions regarding the meaning of documents."  (Pls.' Opp'n at 4.)   Yet plaintiffs present no authority for this blanket proposition.  The case on which they rely, *Commercial Union Insurance Co. v. Seven Provinces Insurance Co.*, 9 F. Supp. 2d 49 (D. Mass. 1998), is inapposite.  First, *Commercial Union* did not decide the admissibility of expert testimony, but instead examined it.  Second, the "highly specialized world" about which the experts in *Commercial Union* testified consisted of the standards and

1

practices of the reinsurance industry, *see id.* at 52, 54, not the meaning of regulatory materials issued by a federal agency, which is well within the province of the Court's expertise, *see Pelletier v. Main Street Textiles, LP*, 470 F.3d 48, 54-55 (1st Cir. 2006) (rejecting expert testimony about the meaning of OSHA regulations and their applicability to defendant's conduct under "the general rule . . . that it is the judge's role, not a witness's, to instruct the jury on the law"). Indeed, plaintiffs' own acknowledgement that "Wyatt bases his expert opinion on a careful and thorough review" of Treasury directives, Treasury reports, and congressional testimony (Pls' Opp'n at 2), only underscores the conclusion that his Report adds nothing to the inquiry beyond what the Court can readily ascertain using its standard interpretive toolkit. Plaintiffs do not explain why the Court should substitute Wyatt's interpretations for its own.

Additionally, even accepting plaintiffs' position that the majority of the Wyatt Report is "background material," fundamental defects remain in the portion of the Report that is expressly described as "OPINIONS," which represents the culmination of the so-called "background material." (Wyatt Rpt. at 16-18.) Included in this "OPINION" section are Wyatt's opinions about Chase's purported obligations created by the language of the TPP letters, an issue at the heart of the legal dispute in this action. (*See* Wyatt Report at 16.) Plaintiffs do not even attempt to rebut Chase's argument that Wyatt's opinions about what the TPP letters allegedly promise and what obligations they allegedly impose upon Chase are inadmissible legal conclusions, wholly divorced from Wyatt's purported expertise. (Def's Mtn. to Strike (Dkt. 28) at 2-3).

## II.   PLAINTIFFS DO NOT DEMONSTRATE WYATT'S EXPERTISE.

In addition to their failure to rebut the inadmissibility of the Wyatt Report's contents, plaintiffs also fail to counter Chase's argument that there is insufficient basis for Wyatt's conclusions. Plaintiffs argue that the Wyatt Report should be admitted based on Wyatt's experience alone (Pls' Opp'n at 5), but they do not present any convincing reason why Wyatt's

experience qualifies him as an expert on any of the three topics that, according to plaintiffs, his opinions cover: (1) whether Chase routinely fails to comply with HAMP and why; (2) the likely number of putative class members in Massachusetts; (3) the consequences to homeowners of Chase's alleged failure to convert TPPs into permanent modifications. (Pls' Opp'n at 2-3.)

Wyatt's experience with the implementation of HAMP at Litton Loan Servicing has nothing to do with *Chase's* policies and procedures. In truth, Wyatt's Curriculum Vitae suggests that, during Wyatt's tenure with Litton Loan, his duties at managing litigation heavily outweighed his duties relating to the implementation of HAMP, which, in any event, plaintiffs overstate. (*Compare* Pls' Opp'n at 2 (contending that Wyatt "*supervised* the implementation of HAMP at Litton Loan"), *with* Wyatt CV (Dkt. 23-2) (stating that Wyatt merely "*[a]ssisted* in the implementation of [HAMP]") (emphasis added).) Moreover, Wyatt was not even working at Litton Loan by the time that Treasury's Supplemental Directive 10-01, which instituted a significant change in the HAMP application and approval procedure, went into effect. (*See* Wyatt CV; Def's Opp'n to Pls' Mtn. for Provisional Class Cert. (Dkt. 29) at 4; Mem. in Support of Def's Mtn. to Dismiss (Dkt. 12) at 5.)

Plaintiffs also point to Wyatt's experience in assisting one homeowner who sought a HAMP modification from Chase. (Pls' Opp'n at 2.) But they fail to explain how having had a single HAMP-related experience with Chase "from the outside" (*id.*) qualifies Wyatt as an expert on Chase's internal procedures, systems, and staffing.

Finally, Wyatt's so-called "conservative conclusion" about the putative class size estimate, as compared to the estimate provided in the declaration of Karen M. Shine (*id.* at 3), only undermines his purported expertise in interpreting Treasury documents (*see* Wyatt Rpt. (Dkt. 23-1) at 17 (basing the class size estimate on Wyatt's reading of Treasury's May 2010

3

Servicer Performance Report)).  The fact that Wyatt misestimated the size of the putative class by nearly eightfold reveals his interpretive methods to be nothing more than guesswork.

## CONCLUSION

For the reasons set forth above and in Chase's Motion to Strike the Expert Report of Christopher Wyatt, the Court should strike the Wyatt Report.

Dated: November 8, 2010                Respectfully submitted,

                                       JPMorgan Chase Bank, N.A.,
                                       By its attorneys,

                                        /s/ Matthew A. Kane
                                       Donn A. Randall (BBO No. 631590)
                                       Matthew A. Kane (BBO No. 666981)
                                       BULKLEY, RICHARDSON AND GELINAS, LLP
                                       98 North Washington St., Suite 500
                                       PO Box 9750
                                       Boston, Massachusetts 02114-0016
                                       Telephone: (617) 368-2520
                                       Facsimile: (617) 368-2525
                                       drandall@bulkley.com
                                       mkane@bulkley.com

                                       OF COUNSEL:
                                       Michael J. Agoglia (CA SBN 154810)
                                       Wendy M. Garbers (CA SBN 213208)
                                       MORRISON & FOERSTER LLP
                                       425 Market Street
                                       San Francisco, California  94105-2482
                                       Telephone: (415) 268-7000
                                       Facsimile: (415) 268-7522
                                       magoglia@mofo.com
                                       wgarbers@mofo.com

**CERTIFICATE OF SERVICE**

  I, Matthew A. Kane, hereby certify that a true copy of the foregoing document was served upon all counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on November 8, 2010.


              _/s/ Matthew A. Kane_
              Matthew A. Kane


2914472