UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-10380-RGS

RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE,
JEAN LICATA AND ARSENIA RODRIGUES,
on behalf of themselves and all others similarly situated,

v.

J.P. MORGAN CHASE BANK, NA,

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
AND PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

November 24, 2010

STEARNS, D.J.

Homeowner plaintiffs Ramiza Durmic, Donald Treannie, Heather Treannie, Jean Licata, and Arsenia Rodrigues brought this diversity lawsuit alleging common-law claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), promissory estoppel as an alternative theory to recovery (Count III), and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count IV).[1]  On July 12, 2010, defendant J.P. Morgan Chase Bank, NA (Chase), moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  On August 20, 2010, plaintiffs moved for a preliminary injunction to prevent Chase from foreclosing on their own mortgages and those of others similarly situated.  A hearing on the two motions was held on November 22, 2010.

BACKGROUND

---

[1]Count IV is brought by all plaintiffs except Durmic who, after the commencement of litigation, conditionally accepted an offer for a permanent loan modification. First. Am. Comp. ¶ 67.

The facts in the light most favorable to plaintiffs as non-moving parties are as follows.  Plaintiffs are homeowners who obtained home mortgage loans from third-party lenders and whose loans are now serviced by Chase.  After being persuaded to participate in the Obama Administration's Home Affordable Modification Program (HAMP),[2] Chase solicited some of its customers who were having difficulty staying current with their mortgages to apply for a loan modification to make the monthly payments more affordable. In other cases, borrowers who had independently learned of HAMP initiated the request for a modification.  Under the HAMP guidelines, before any applicant receives a mortgage modification, the bank is to conduct a Net Present Value (NPV) test[3]  to determine the borrower's pre-eligibility.  If the borrower appears to qualify under the HAMP guidelines, he or she is given a document entitled Home Affordable Modification Trial Period Plan (TPP).  The TPP is a Fannie Mae/Freddie Mac "Uniform Instrument" that has the appearances of a contract.[4]

---

[2]HAMP grew out of a $75 billion allocation of funds from the U.S. Treasury's Troubled Asset Relief Program (TARP).  The announced goal of HAMP was to help 3 to 4 million distressed homeowners avoid foreclosure.  Despite the ambitious goal, according to one business report, as of October 1, 2010, of 1.37 million trial modifications undertaken by HAMP, 53.2 percent (699,924) had been canceled and 34.1 percent (495,898) made permanent.  See Dan Indiviglio, *Is the Treasury's Foreclosure Prevention Program a Failure?,* THE ATLANTIC (Oct. 25, 2010, 4:39 PM), http://www.theatlantic.com/business/archive/2010/10/is-the-treasurys-foreclosure-prevention-program-a-failure/65129/.

[3]The NPV test calculates whether it is more profitable for the bank to modify the homeowner's loan or to allow it to go into foreclosure.  Def.'s Mot. to Dismiss at 4-5.

[4]The TPP at issue characterizes itself as an agreement, contains signature lines for the Lender and the Borrower and includes distinctly contractual phrases such as "under seal" and "time is of the essence."   The TPP distributed by Chase had the bank's name printed in bold below the Lender's signature line with spaces provided for a notary's

The Chase TPP begins with the following recitation.

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

* * *

I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

After setting out a series of good faith representations required of the borrower, and

obligating the borrower to submit proof of current income, the TPP then lists individualized

payment terms for a three-month trial period.[5]  In the following section entitled "Time is of

the Essence," the TPP states:

[i]f prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; . . . . [6]

---

attestation.

[5]The borrower was also obligated to obtain credit counseling if required to do so by Chase.

[6]That the undertaking by the Lender in the opening paragraph ("will provide me with a Home Affordable Modification Agreement") is in tension with clause (i) of the above paragraph (which allows the Lender to unilaterally terminate the TPP by refusing to sign

After successfully passing the NPV test and meeting other HAMP criteria, each of the named plaintiffs received a TPP, which they signed and returned to Chase.  Each of the plaintiffs submitted the required proof of income and all but plaintiff Jean Licata made the three required payments.[7]   None of the named plaintiffs, however, received an executed copy of the TPP or a Modification Agreement.

Plaintiffs seek certification of a class consisting of all Massachusetts borrowers who entered into a written TPP Agreement with Chase and made the payments identified in Section 2, other than the borrowers to whom Chase sent either a Home Affordable Modification Agreement prior to the date of class certification or a written denial of eligibility on or before the Modification Effective Date in Section 2 of the borrower's TPP Agreement.[8]   Plaintiffs also request a permanent injunction enjoining Chase from foreclosing on their mortgages or the mortgages of any member of the proposed class; an order requiring Chase to "appropriately train" its employees to perform their "duties" under HAMP; an order for specific performance of Chase's alleged contractual obligations; and actual or statutory damages as well as multiple damages and litigation costs (including attorneys' fees).  First Am. Compl. ¶ 169.

<u>DISCUSSION</u>

---

it) is apparent.

[7]Licata's third trial payment was late, and since December of 2009, she has made no further payments on her mortgage.

[8]Consideration of plaintiffs' motion for class certification has been deferred pending resolution of this motion to dismiss and the related motion for a preliminary injunction, although at the hearing the court expressed skepticism about the feasibility of certifying a national litigating class.

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). See also Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007). The court may also look to documents, the authenticity of which are not disputed by the parties, to documents central to the plaintiff's claim, and to documents referenced in the complaint. Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

### Count I: Breach of Contract[9]

"To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." Guckenberger v. Boston Univ., 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted). To establish a breach, plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms. A term is material when it involves "an essential and inducing feature" of the contract. Buchholz v. Green Bros. Co.,

---

[9]Chase accuses plaintiffs' of attempting an "end-run around HAMP's lack of a private right of action" by bringing their lawsuit on a contract theory. Def.'s Mot. to Dismiss at 10. As plaintiffs point out, none of the cases Chase cites relate to the TPP at issue in this case. "It is the [TPP] contract - not HAMP - that Plaintiffs seek to enforce." Pls.' Opp'n Mot. to Dismiss at 7. On the proposition, the court agrees with Chase that HAMP explicitly precludes any private right of action. Whether HAMP's preclusion reaches plaintiffs' litigation theory is an issue better decided on summary judgment.

272 Mass. 49, 52 (1930).

Chase argues that the plaintiffs' breach of contract claim fails as a matter of law because the purported agreement lacks any legally cognizable form of consideration. The contract must be a "bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004) (internal citation and quotations marks omitted). Here, Chase contends, plaintiffs are barred from using their payments under the TPP as consideration because of the settled rule that "performance of a pre-existing legal duty that is neither doubtful nor subject to honest and reasonable dispute is not valid consideration where the duty is owed to the promisor, or to the public at large." In re Lloyd, Carr & Co., 617 F.2d 882, 890 (1st Cir. 1980).

Chase's citations to cases standing for the proposition that consideration is lacking where a mortgagor pays a discounted amount in satisfaction of an existing debt (see Def.'s Mot. to Dismiss at 13) are, however, inapposite. Here, plaintiffs relinquished more than the TPP payments. Under the TPP, they were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so by Chase. See First Am. Compl. - Ex. 9. Plaintiffs could also be required to make payments into a newly established escrow account. First. Am. Compl. - Ex. 2 at 11. Plaintiffs were under no preexisting legal obligation to meet any of these conditions. The settled rule defines one type of valid consideration as consisting of a legal detriment to the promisee that entails even the slightest trouble or inconvenience. See, e.g., Wit v. Commercial Hotel Co., 253 Mass. 564,

572 (1925); <u>see</u> <u>also</u> 3 Samuel Williston, <u>A Treatise on the Law of Contracts</u> § 7:4 (4th ed. 2008).  As the Supreme Judicial Court has explained, "[i]t is enough that the consideration is valuable; it need not be adequate."  <u>Barnett v. Rosen</u>, 235 Mass. 244, 249 (1920).

Consideration may also be measured by the benefit a promise confers on the other party.  Plaintiffs point to the fact that where the TPP required borrowers to establish new escrow accounts for their mortgage payments, the risk to Chase of a default on property tax obligations was reduced, thereby increasing the value of Chase's security interest. Pls.' Opp'n Mot. to Dismiss at 11.  Mandatory credit counseling also presumably reduced the risk of default. <u>Id</u>.  Plaintiffs' provision of detailed financial information allowed Chase to predict with greater certainty their ability to pay. <u>Id</u>. at 11-12.  Thus, although plaintiffs need only allege a legal detriment on their part or a benefit to Chase to establish sufficient consideration, for present purposes, they have alleged both.

Chase next argues that plaintiffs have not alleged legally cognizable damages because they have failed to establish a causal connection between any harm they might have suffered and their participation in the Trial Period Program.  None of the named plaintiffs has had his or her home foreclosed,[10] and any attendant mental anguish would not be not recoverable in any event as contract damages.  <u>See</u> <u>McLean v. Univ. Club</u>, 327 Mass. 68, 76 (1951).  These arguments fail for purposes of the motion to dismiss as plaintiffs are not required to specifically plead general damages.  <u>See</u> <u>Sherlag v. Kelley</u>,

---

[10]Durmic alleges that Chase initiated foreclosure proceedings on August 26, 2009, but after receiving a Chapter 93A demand letter from Durmic's counsel, Chase confirmed in writing that the foreclosure sale had been canceled.  First Am. Compl. ¶¶ 55-58.  The disavowal of any present intent to foreclose on Durmic or any other of the named plaintiffs was reaffirmed by Chase's counsel at the November 22, 2010 hearing.

200 Mass. 232, 236 (1908).  Plaintiffs may recover damages for harms that "flow according to common understanding as the natural and probable consequences of the breach." Evans v. Yegen Assocs., Inc., 556 F. Supp. 1219, 1230 (D. Mass. 1982).  Plaintiffs have pled that with each passing month, their original loan documents remain in effect, subjecting them to the accrual of charges, a further risk of delinquency, damage to their credit ratings, and a heightened risk of eventually losing their homes to foreclosure.[11]

Finally, Chase challenges the breach of contract claims on the grounds that the TPP Agreements lack material terms and constitute, at most, a contingent agreement to attempt to come to an agreement in the future.  Chase notes the absence of terms governing a permanent mortgage modification, such as the principal amount, the monthly payment, the applicable interest rate(s), the loan term, or the amount of escrow payments owed, if any.  See First Am. Compl. - Exs. 8-10, 12.  Chase cites to a long line of Massachusetts cases that have held that loan agreements are unenforceable where key terms remain open, such as "the term of the loan, how it would be secured, the manner and timing of disbursements, events of default, and the manner and timing of interest payments."  Marine Midland Bank v. Herriott, 10 Mass. App. Ct. 743, 744 (1980).

Plaintiffs' litigating theory is that none of this matters because the TPP was not a loan agreement, but rather "a promise to *provide* Plaintiffs with [a loan agreement] at a

---

[11]  However, Chase is correct in arguing that "living in a state of stressful anxiety," First Am. Compl. ¶ 147, is generally not a harm for which plaintiffs can recover under a breach of contract theory.  John Hancock Mut. Life Ins. Co. v. Banerji, 447 Mass. 875, 888 (2006).  Chase is also correct to insist upon specific and personal allegations of injury by named plaintiffs, as opposed to injury to unidentified members of the proposed class.  See In re WellNx Mktg. & Sales Practices Litig., 673 F. Supp. 2d 43, 54-55 (D. Mass. 2009).

specified date if Plaintiffs comply with the necessary conditions." Pls.' Opp'n Mot. to Dismiss at 15. Plaintiffs' fall-back position is that the cases that Chase cites are not as hard and fast as they appear. While contemplation of the execution of a final written agreement normally signals the intent of the parties not to be bound by earlier negotiations, where the ultimate agreement is a mere formality, the contract is complete. Hunneman Real Estate Corp. v. The Norwood Realty, Inc., 54 Mass. App. Ct. 416, 423 (2002). "It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract." Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). In this regard, plaintiffs argue that the essential terms of a Home Affordable Modification Agreement are easily determinable through the mathematical formulas set out in the HAMP regulations and are thus "not open to negotiation or discretionary alteration by either side." Pls.' Opp'n Mot. to Dismiss at 15.[12] At the end of the day, the issue is one of the parties' intent, and cannot be resolved in the context of a motion to dismiss. Chase's motion to dismiss Count I will therefore be denied.

### *Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing*

"'Every contract implies good faith and fair dealing between the parties to it.'" Warner Ins. Co. v. Comm'r of Ins., 406 Mass. 354, 362 n.9 (1990), quoting Kerrigan v. City of Boston, 361 Mass. 24, 33 (1972). Under this covenant, "'neither party shall do anything

---

[12]"[T]he need for further documents does not preclude the formation of a binding agreement." Tagus Group Int'l v. Sherman, 76 Mass. App. Ct. 421, 429 (2010); see also George W. Wilcox, Inc. v. Shell E. Petroleum Prods., 283 Mass. 383, 388 (1933) (finding the terms need only be set out "with sufficient definiteness and clarity that a court, by interpretation with the aid of existing and contemplated circumstances, may enforce it.").

that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-472 (1991), quoting Uproar Co. v. Nat'l Broad. Co., 81 F.2d 373, 377 (1st Cir. 1936). Want of good faith "carries an implication of a dishonest purpose, conscious doing of wrong, or breach of a duty through motive of self-interest or ill will." Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc., 11 Mass. App. Ct. 998, 999 (1981). Accord Schwanbeck v. Fed.-Mogul Corp., 31 Mass. App. Ct. 390, 404 (1991), rev'd on other grounds, 412 Mass. 703 (1992).

Where no contract exists, there can be no derivative covenant of good faith and fair dealing. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations in their performance. See Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004).

Chase's strongest argument against this Count is that plaintiffs have not adequately pled that Chase acted with any intent of causing them injury, much less with the "dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing." Schultz v. R.I. Hosp. Trust Nat'l Bank, NA, 94 F.3d 721, 730 (1st Cir. 1996) (applying Massachusetts law). Indeed, "merely providing bad service does not constitute acting in bad faith." Shawmut Bank, N.A. v. Wayman, 34 Mass. App. Ct. 20, 25 (1993). At bottom, however, the covenant is not itself a cause of action that exists independently of the

contract, but rather it defines an aspect of the damages that may flow from a breach of an existing contract that is undertaken with the malicious purpose of frustrating the other party's legitimate right to enjoy performance.  Cf. AccuSoft Corp. v. Palo, 237 F.3d 31, 45 (1st Cir. 2001).  As such, the covenant of good faith and fair dealing is better addressed in the context of jury instructions than in a motion to dismiss.  As for present purposes, the court has found that plaintiffs have adequately pled the existence of a contract. Consequently, the motion to dismiss Count II will be denied.

### *Count III: Promissory Estoppel*

To recover on the theory of promissory estoppel, there must be: (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation by the person to whom it was made; and (3) detriment to such person as a result of the act or omission.  See, e.g., Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992).  As an estoppel is typically asserted as a substitute for a failure of consideration, the court's discussion of the adequacy of consideration with respect to Count I obviates the need for any further elaboration. Chase's motion to dismiss Count III as an alternative theory of recovery will be denied.

### *Count IV: Violation of the Massachusetts Consumer Protection Act*

Plaintiffs finally allege a cause of action under the state Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 9, contending that Chase's conduct constituted an unfair or deceptive act or practice within the meaning of the statute.  Chase argues that these claims fail because plaintiffs have not met the demand letter requirement and

because they are entirely derivative of plaintiffs' breach of contract and tort claims.  See Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40, (D. Mass. 2006).  Chapter 93A directs itself to conduct that "although legally proper, [is] unfair to the public." Schubach v. Household Fin. Corp., 375 Mass. 133, 136 (1978) (citations omitted).

In judging the sufficiency of a pre-certification demand letter, Massachusetts looks solely to the description of the individual claimant's own injury.  Richards v. Arteva Specialities S.A.R.L., 66 Mass. App. Ct. 726, 733 (2006).  Specifically, Chase complains that the Treannies, Licata, and Rodrigues were not parties to the litigation at the time the March 4, 2010 demand letter was sent.  Plaintiffs argue that the letter specifically requested relief on behalf of the putative class and was therefore sufficient as to all plaintiffs.  They argue that they are entitled to rely on the initial demand letter in satisfaction of the statutory requirement, especially because "traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice."  Baldassari v. Pub. Fin. Trust, 369 Mass. 33, 41 (1975). Massachusetts courts have found that "[i]f a proper demand is made by one plaintiff, . . . we think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice."  Baldassari, 369 Mass. at 42.  As it is the court's practice to decide Chapter 93A claims independently of a jury's findings, the court will defer further consideration of Chase's motion to dismiss Count IV.  See Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604, 606 (1988).

### *Motion for Preliminary Injunction*

On August 20, 2010, Licata, on behalf of herself and the proposed class, filed a

motion for a preliminary injunction to prevent Chase from foreclosing on any and all of their mortgages until a decision on the merits has been made in this case as to whether Chase is contractually obligated to provide class members with permanent loan modifications. Licata applied for a HAMP loan modification in August of 2009. Chase offered her a verified income TPP Agreement under HAMP. She asserts in the First Amended Complaint that she timely made each of the three trial payments due in September, October, and November of 2009. However, during the November 22, 2010 motion hearing, Chase's counsel, Michael Agoglia, insisted, without objection by opposing counsel, that Licata's November payment was late.[13] Licata also alleges that she submitted the required documentation on four separate occasions since she began the HAMP loan modification process. Licata Decl. ¶ 8. Licata did not receive any response from Chase regarding a modification until March 11, 2010, when she was informed by letter that her application had been denied because she had failed the NPV test. First. Am. Compl. - Ex. 11. Licata claims, however, that the rejection was improper because her financial situation had not deteriorated from the time that she submitted her application and her verified proof of income. She also claims that on July 3, 2010, she was given notice that Chase intended to commence foreclosure proceedings.[14] Licata alleges that her experience with Chase

---

[13]Chase argued for the first time during the hearing that the "trial period payment date for November was the 1st. She missed it. . . . Ms. Licata did not timely make the third payment under the TPP." Mot. Hr'g Tr. at 47-48, Nov. 22, 2010.

[14]Plaintiffs did not provide the notice as an exhibit, although Chase has submitted a copy and requested judicial notice of the document. The notice informs Licata of Chase's intention to foreclose as well as her right to claim protection under the Servicemembers Civil Relief Act.

is typical of the members of the putative class.

The test governing the award of a preliminary injunction requires consideration of "(1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm, (3) a balancing of the relevant equities, and (4) the effect on the public interest." Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995). "Likelihood of success is the main bearing wall of the four-factor framework." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996). Chase opposes plaintiffs' motion for a preliminary injunction on standing, equity, and merits grounds.

Standing is the threshold issue in evaluating a motion for preliminary injunction. Frotton v. Barkan, 235 F. Supp. 2d 92, 94 (D. Mass. 2002). To satisfy her burden to prove standing, Licata must show that: (1) she personally suffered some actual or threatened injury; (2) the injury can be fairly traced to the challenged conduct; and (3) a favorable decision will likely redress the injury. See Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 30 (1st Cir. 1999). Chase argues that Licata cannot meet this burden because she faces no actual threat of foreclosure. On the contrary, Chase claims that on June 28, 2010, two months before Licata moved for injunctive relief, a hold on foreclosure activity was placed on Licata's file. See Green Decl. ¶ 8 - Ex. B at 2-12. Licata's response is that Chase has not guaranteed that the stay will continue beyond the court's entering of a decision on the pending Motion to Dismiss. Pls.' Reply Mot. to Dismiss at 5. Chase, however, laid this concern to rest during the November 22, 2010 motion hearing through its counsel's representation that:

[o]n the basis of the representation from Chase that it will hold off on any

-14-

foreclosure for Ms. Licata until the Court decide [sic] the merits of the case, that it can go ahead and take what they still characterize as 'just a representation' from counsel into something quite definite.

Tr. at 49.[15, 16]

Chase also persuasively argues that equity requires that the motion be denied because Licata has "unclean hands." See Hannon v. Allen, 241 F. Supp. 2d 71, 73 (D. Mass. 2003). Licata not only failed to comply with the terms of the TPP by making a late payment – she has made no payments on her mortgage loan since December of 2009. Green Decl. ¶ 10 - Ex. D. During this time, Chase claims (without objection) to having paid property taxes and the insurance on Licata's property. Id. Licata has neither alleged to have attempted payment nor placed the payments in escrow (as did plaintiff Rodrigues). First Am. Compl. ¶ 115. The court agrees with Chase that Licata's conduct disqualifies her from seeking equitable relief. See Alcaraz v. Wachovia Mortg. FSB, 592 F. Supp. 2d 1296, 1305-1306 (E.D. Cal. 2009).

With respect to the public interest effects of a nationwide injunction on behalf of the putative class enjoining all foreclosures by Chase, Licata argues that such relief "correlates with the strong public interest in avoiding foreclosures" and "serve[s] the public purposes embodied in the Obama Administration's recent pronouncements and initiatives regarding the importance of turning trial plans into permanent loan modifications." Pls.'

---

[15]Chase's counsel also argued with considerable force during the November 22, 2010 hearing that, "[u]nder [plaintiffs'] own construction of the contract, [Licata] is not a member of the class, and she has no claim." Tr. at 28.

[16]Moreover, Chase notes that none of the other named plaintiffs allege an impending threat of foreclosure. Durmic, the possible exception, has conditionally accepted an offer for a permanent loan modification.

Mot. for Prelim. Inj. at 19.  Chase argues more convincingly that the proposed injunction is significantly overbroad and would "contravene public policy by subsidizing borrowers facing unavoidable foreclosure, such as those who do not qualify for permanent modifications."  Def.'s Opp'n to Mot. for Prelim. Inj. at 18.  Chase emphasizes that HAMP was not intended to prevent foreclosures by subsidizing borrowers who bought homes well beyond their means.  Id.  Furthermore, plaintiffs' proposed injunction would "sweep in people who have been denied HAMP eligibility but perhaps got an alternative mod[ificiation] program offered to them by Chase.  They may be paying under that mod[ification] program, and they may later default during the pendency of this injunction. . . .  Those are not similarly situated individuals."  Nov. 22, 2010 Mot. Hr'g Tr. at 52.  Because Licata cannot meet the requirements for a preliminary injunction on behalf of herself or the putative class, Licata's motion for a preliminary injunction is denied.

ORDER

For the foregoing reasons, Chase's motion to dismiss the breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and promissory estoppel (Count III) claims is denied.  Chase's motion to dismiss the Chapter 93A claims (Count IV) will be deferred.  Licata's motion for a preliminary injunction is denied.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

-16-