UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-10380-RGS

RAMIZA DURMIC, DONALD TREANNIE, HEATHER TREANNIE,
JEAN LICATA AND ARSENIA RODRIGUES,
on behalf of themselves and all others similarly situated

v.

J.P. MORGAN CHASE BANK, NA

MEMORANDUM AND ORDER ON MOTION
FOR PROVISIONAL CLASS CERTIFICATION

December 10, 2010

STEARNS, D.J.

Plaintiffs Ramiza Durmic, Donald Treannie, Heather Treannie, Jean Licata, and Arsenia Rodrigues are homeowners who obtained home mortgage loans from third-party lenders and whose loans are now serviced by defendant J.P. Morgan Chase Bank, NA (Chase). On August 20, 2010, plaintiffs filed a Rule 23 motion seeking to certify a "provisional" class of Massachusetts borrowers who entered into Home Affordable Modification Trial Period Plan Agreements with Chase.

## BACKGROUND

On March 3, 2010, plaintiffs filed a class action Complaint against Chase on behalf of themselves and all other persons similarly situated. Plaintiffs' lawsuit alleged common-law claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), promissory estoppel as an alternative theory to recovery (Count III), and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count IV).

The following background note is extracted from the court's November 24, 2010 Memorandum and Order denying Chase's motion to dismiss and plaintiffs' motion for a preliminary injunction.[1] After being persuaded to participate in the Obama Administration's Home Affordable Modification Program (HAMP), Chase solicited some of its customers who were having difficulty staying current with their mortgages to apply for a loan modification to make their monthly payments more affordable. In other cases, borrowers who independently learned of HAMP initiated the request for a modification. Under the HAMP guidelines, before any applicant receives a mortgage modification, the lender is required to conduct a Net Present Value (NPV) test to determine whether it is more profitable to modify the homeowner's loan or to allow it to go into foreclosure. If the borrower appears to qualify under the HAMP guidelines, he or she is given a document entitled "Home Affordable Modification Trial Period Plan" (TPP). The TPP is a Fannie Mae/Freddie Mac "Uniform Instrument" that has the appearances of a contract. After setting out a series of good faith representations required of the borrower and obligating the borrower to submit proof of current income, the TPP then lists individualized payment terms for a three-month trial period.[2]

After successfully passing the NPV test and meeting other HAMP criteria, each of the named plaintiffs received a TPP, which they signed and returned to Chase. Each of

---

[1] A more detailed account of the facts of this case, including a discussion of plaintiffs' substantive claims, can be found in the "Background" section of the court's prior Order.

[2] The borrower was also obligated to obtain credit counseling if required by Chase.

the plaintiffs submitted the required proof of income and made the three required payments (although the timeliness of some of the payments by named plaintiffs is contested). None of the named plaintiffs, however, received an executed copy of the TPP or a permanent loan modification.

Plaintiffs seek certification of a class consisting of all Massachusetts borrowers who entered into a written TPP Agreement with Chase and who made the three required payments, other than borrowers to whom Chase sent either a Home Affordable Modification Agreement (HAMA) prior to the date of class certification or a written denial of eligibility on or before the Modification Effective Date set out in the TPP Agreement. Plaintiffs estimate the proposed class to consist of approximately 1,875 members.

## DISCUSSION

To satisfy Rule 23, the nominee class representatives must establish the four elements of Rule 23's subpart (a), and one of the three elements of subpart (b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-614 (1997). Plaintiffs argue that they satisfy all four elements of Rule 23(a), and at least one of the elements of Rule 23(b).

### *RULE 23(a)*

The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Amchem, 521 U.S. at 613. Although at least one core issue of fact or law must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action. See In re Lupron® Mktg. and Sales Practice Litig., 228 F.R.D. 75, 88 (D. Mass. 2005), citing In re Gen. Motors Trucks, 55 F.3d 768, 817 (3d Cir. 1995).

3

### *Rule 23(a)(1): Numerosity*

To satisfy the numerosity requirement, the class must be sufficiently large that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Given the estimate that the class would include 1,875 Massachusetts borrowers, as a practical matter, the numerosity requirement is met because joinder of the members of the class is not feasible.

### *Rule 23(a)(2): Commonality*

To satisfy the commonality requirement, there must exist common questions of law or fact impacting the members of the proposed class. Fed. R. Civ. P. 23(a)(2). "The threshold of 'commonality' is not high. Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members." Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986) (citations omitted). For that reason, the commonality requirement has been characterized as a "low hurdle." S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (citation omitted).

Plaintiffs submit that the members of the proposed class share the following common questions of law: (1) the nature, scope, and execution of Chase's obligations to plaintiffs under the TPP Agreements; (2) whether the TPP Agreement is a binding contract legally obligating Chase to offer class members a permanent HAMP modification; (3) whether Chase's failure to provide permanent HAMP modifications effective "the first day of the month following the month in which the last Trial Period Payment is due," or to issue timely written denials as to an applicant's eligibility, amounts to a breach of contract and/or

4

a breach of the covenant of good faith and fair dealing; (4) whether the court can order Chase to pay individual damages and, if so, what the appropriate measure of damages should be; and (5) whether the court may and should enter injunctive relief.  Plaintiffs allege that "[a]ll of these claims are based on the same standardized pattern of practices." Pls'. Mot. for Prov. Class Cert'n at 12.  All of these issues of law and fact would appear to affect all members of the proposed class; therefore, plaintiffs satisfy the commonality requirement.[3]

### *Rule 23(a)(3): Typicality*

"The representative plaintiff satisfies the typicality requirement when [his or her] injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory."  In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008).  The purpose of the typicality requirement is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 311 (3d Cir. 1998). The representative plaintiffs' claims, however, need not be absolutely identical to those of the absent class members.  In re Credit Suisse, 253 F.R.D. at 23.

Plaintiffs contend that their claims are typical because they arise from the same

---

[3]Chase makes no specific arguments regarding plaintiffs' satisfaction of the commonality requirement, though it does argue more broadly that the putative class fails basic Rule 23 requirements.

5

course of conduct and from nearly identical circumstances. Durmic,[4] the Treannies, Licata, and Rodrigues all claim that: (1) after being found eligible for HAMAs, Chase entered into identical or nearly identical TPP Agreements with each of them; (2) they complied with the TPP Agreements, but did not receive permanent HAMAs on or before the effective date; (3) Chase failed to answer their inquiries as to their status and failed to provide timely permanent loan modifications or written denials of eligibility. Pls.' Mot. for Prov. Class Cert'n at 13-14.

Plaintiffs also argue that their claims are typical because the legal theories on which they base their claims are not merely similar to those of the putative class members – "they are identical." Id. at 14. "These claims include, *inter alia*, that Chase's failure to honor its agreement with borrowers and convert TPP [A]greements into permanent loan modifications breached an enforceable contract, breached the implied covenant of good faith and fair dealing, ran afoul of the doctrine of promissory estoppel, and violated [the Massachusetts Consumer Protection Act]." Id.

Chase, however, vigorously questions whether the named plaintiffs are sufficiently typical of the proposed class.[5] Under Chase's (plausible) reading of plaintiffs' class definition, the class would encompass at its boundaries persons who never submitted the documentation required by the TPP. Def.'s Opp'n to Mot. for Prov. Class Cert'n at 11. It would also include those who made misstatements about hardship, imminency of default,

---

[4]Durmic has conditionally accepted a permanent loan modification offer from Chase. Her future standing in the litigation appears to be questionable.

[5]Chase's arguments regarding typicality are set out in its brief so as to simultaneously challenge the merits of plaintiffs' adequacy claim.

6

or whether the mortgaged property was truly their primary residence (the TPP requires that information provided to establish permanent modification eligibility be "true and correct." Id.). The putative class would, moreover, include those who met the initial TPP eligibility requirements, but were ultimately rejected because they made verbal misrepresentations when applying for the HAMA or because the value of their property or the source and amount of their income changed after the initial TPP evaluation. Id. at 11-12.

Chase further contends that three of the named plaintiffs are ineligible to be members of the putative class in any event. According to Chase, these three named plaintiffs made payments that were not timely as required by Section 2 of their TPPs: Licata's third payment was due November 1, 2009, but Chase did not receive it until November 4; Rodrigues's second payment was due July 1, 2009, but Chase did not it until July 9, 2009; Durmic's first payment was due July 1, 2009, but Chase did not receive it until July 21, 2009. Def.'s Opp'n to Mot. for Prov. Class Cert'n at 17-18. Chase concedes that Durmic attempted to make the payment on July 1, 2009, but states that her payment was not accepted because she did not pay with certified funds, as Chase required.

It is axiomatic that a plaintiff cannot represent a class of which he or she does not qualify as a member. See, e.g., E. Texas Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 404-405 (1977). Plaintiffs respond that missing payment deadlines by a few days does not render them atypical because the purported tardiness is an irrelevant "minor factual variation[]," that is "so small as to be immaterial." Pls.' Reply at 15. The court disagrees.

Chase makes the further point that the named plaintiffs are vulnerable to unique defenses. Chase deemed the Treannies to be ineligible for a permanent modification

7

because they significantly understated their gross monthly income to the point that their monthly mortgage payment ratio no longer met the required threshold. Def.'s Opp'n to Mot. for Prov. Class Cert'n at 18-19. Rodrigues was determined ineligible because the value of her property (the foreclosure price) was later determined to be $20,000 more than originally estimated when she applied for the HAMA. Id. at 19. As a result, Rodrigues's loan ultimately failed the NPV test. Id. Durmic's tax returns showed that she overstated her gross monthly income by nearly 40 percent. While plaintiffs note that a plaintiff-specific defense defeats typicality "only when a unique defense will consume the merits] of the case. . . .", McAdams v. Massachusetts Mut. Life Ins. Co., 2002 WL 1067449, at *5 (D. Mass. May 15, 2002) (citation omitted), the dispute over the eligibility of the named plaintiffs to participate in the class plausibly threatens to engulf the Complaint.

The contested claims of typicality highlight the importance of developing a more robust factual record through discovery before the certification issue is joined.[6] The court does not agree with the plaintiffs' contention that they have produced sufficient evidence at this point for class certification, even one on a provisional basis.

### *Rule 23(a)(4): Adequacy*

The fourth and final requirement under Rule 23, subpart (a), is that the representative plaintiffs must be able to fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a)(4). Based on the court's determination that the typicality

---

[6]Plaintiffs complain that Chase refused plaintiffs' request to engage in reciprocal discovery related to class certification on October 9, 2010. Pls.' Reply at 7. Chase explains that it moved to dismiss to seek a determination of the legal sufficiency of plaintiffs' claims before subjecting itself to the burden and expense of discovery. It was within Chase's right to do so.

8

requirement has not been met (at least as yet), it cannot evaluate the named plaintiffs' adequacy at this time. For this reason, the court also declines to discuss the merits of whether plaintiffs satisfy one or more of the requirements of Rule 23, subpart (b).

## ORDER

For the foregoing reasons, plaintiffs' motion for provisional class certification is <u>DENIED</u> without prejudice. The parties will submit a joint proposed scheduling order regulating discovery within twenty-one (21) days of the date of this Order.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE