<pre>
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3       In Re: JPMORGAN CHASE
         MORTGAGE MODIFICATION LITIGATION    No. 11-md-02290-RGS
 4       Related cases:

 5       11-cv-11804-RGS

 6       11-cv-11812-RGS

 7       11-cv-11817-RGS

 8       11-cv-11818-RGS

 9       11-cv-11830-RGS

10       11-cv-11831-RGS

11       11-cv-11838-RGS

12       11-cv-11839-RGS

13       11-cv-11840-RGS

14       11-cv-11841-RGS

15       11-cv-10380-RGS

16

17            BEFORE THE HONORABLE RICHARD G. STEARNS
                   UNITED STATES DISTRICT JUDGE
18              MOTION FOR PRELIMINARY APPROVAL
                       December 5, 2013
19

20

21                              Courtroom No. 21
                                1 Courthouse Way
22                              Boston, Massachusetts 02210

23

                       JAMES P. GIBBONS, RPR/RMR
24                        Official Court Reporter
                      1 Courthouse Way, Suite 7205
25                    Boston, Massachusetts  02210
                         jmsgibbons@yahoo.com
</pre>

APPEARANCES:

KLEIN, KAVANAGH, COSTELLO, LLP, (By Gary E. Klein, Esq.), 85 Merrimac Street, 4th Floor, Boston, Massachusetts  02114, on behalf of Plaintiffs

LEVIN, FISHBEIN, SEDRAN & BERMAN, (By Charles E. Schaffer, Esq.) 510 Walnut Street, Suite 500, Philadelphia, Pennsylvania 19106-3697, on behalf of Plaintiffs

KELLER ROHRBACK, LLP, (By Gretchen F. Cappio, Esq.), Suite 3200, 1201 Third Avenue, Seattle, Washington  98101-3052, on behalf of Plaintiffs

CUNEO, GILBERT & LaDUCA, LLP, (By Michael J. Flannery, Esq.) 300 North Tucker Blvd, Suite 1100, St. Louis, Missouri 63101, on behalf of Plaintiffs

MORRISON & FOERSTER, LLP, (By Michael J. Agoglia, Esq.) 425 Market Street, San Francisco, CALIFORNIA 94105, on behalf of Defendant

BULKLEY, RICHARDSON & GELINAS, LLP, (By Matthew A. Kane, Esq.), 125 High Street, Oliver Street Tower, 16th Floor, Boston, Massachusetts 02110, on behalf of Defendant

```
 1                        P R O C E E D I N G S
 2            THE CLERK:  All rise for this Honorable Court.
 3        Court is open.  Please be seated.
 4        The case before the Court carries Case No. 11-md-2290,
 5    In Re: JPMorgan Chase Mortgage Modification Litigation.
 6        Counsel, please identify yourselves for the record.
 7            MR. KLEIN:  Gary Klein, your Honor, Klein,
 8    Kavanagh & Costello, for the plaintiffs.
 9            MR. SCHAFFER:  Charles Schaffer, your Honor, Levin,
10    Fishbein, Sedran & Berman, for the plaintiffs.
11            MS. CAPPIO:  Gretchen Cappio, Keller Rohrback, for
12    the plaintiffs.
13            MR. FLANNERY:  Good afternoon, your Honor.  Michael
14    Flannery, with Cunio, Gilbert & LaDuca, on behalf of the
15    plaintiffs.
16            MR. AGOGLIA:  Your Honor, Michael Agoglia, with
17    Morrison & Foerster, along with Matthew Kane, for defendant,
18    Chase.
19            THE COURT:  Let me say at the outset, this does
20    seem like quite an achievement.  I do understand it occurs
21    in the context of a broader effort by defendant to place
22    some of the -- or most, if not all, of the mortgage issues
23    behind it; but, nonetheless, this is obviously a settlement
24    that will stand or fall, which I doubt it will, on its own.
25        I have received a motion from an Attorney Leonard
```

1   Bennett, who I think is probably a name known to you, just

2   judging by the contents of the motion itself.  It is a

3   motion to continue the preliminary approval hearing to

4   permit -- I think what he is asking for is an opportunity to

5   discuss, most likely with you, Mr. Klein, the proposed

6   settlement in the case.

7        I have denied the motion.  I think perhaps Mr. Bennett

8   misunderstands the purpose of the hearing today, which is

9   not, in fact, to approve the settlement, but to give the

10  Court an opportunity to understand the terms of the

11  settlement as it has been reached.

12       Obviously, I have read the papers.  I do think I

13  understand it, but I have tried to assure -- I only received

14  this motion 15 minutes ago, but have already entered an

15  order explaining that there will be sufficient opportunity

16  for everyone who wishes to be heard on the ultimate approval

17  of the settlement to be heard.  But I did not see any reason

18  to postpone what is, in effect, more an informational

19  opportunity for the Court today.

20       So, Mr. Klein, I think it would be appropriate if

21  perhaps you proceeded with an outline of what it is that has

22  been accomplished and is proposed that the Court endorse.

23       MR. KLEIN:  Yes, your Honor.

24       Thank you for hearing us today.  As you know, at least

25  four lawyers flew in for this hearing, so we appreciate your

1    allowing it to go forward at this time.

2        Cocounsel and I are pleased to present this settlement

3    for your review and preliminary approval.  It easily meets

4    the standards for preliminary approval, and we expect it to

5    meet the standards for final approval as well.

6        It provides an excellent outcome, consistent with the

7    goals of the plaintiffs and the class.

8        It is not my intention to make an extended presentation

9    to supplement the memorandum of law that we filed, unless

10   you have questions.  However, I can note some of the key

11   elements of this settlement just so that it is on the

12   record, if you would like.

13       THE COURT:  I think that would be most helpful, and

14   then if I have questions with respect to any of them or any

15   others that I have encountered that are not answered, it

16   might be a good chance for me to ask them.

17       MR. KLEIN:  Let me begin by describing, very

18   briefly, the benefits of the settlement to the class.

19       It is, in some ways, a less-traditional settlement, in

20   that it does not provide an opportunity for monetary relief

21   to settlement class members, but, instead, provides for

22   programmatic relief that is an opportunity for settlement

23   class members to get -- to make additional applications for

24   loan modifications and to use that process to, if possible,

25   lower the monthly payments.

1        The settlement provides for a streamline process for

2    class members to apply for those loan modifications, and it

3    provides for a dedicated 800 number, trained staff to answer

4    inquiries and to help the modifications through the process.

5    It provides for deadlines for outcomes in the modification

6    application process, and it provides for clarity about

7    review processes for correcting errors in erroneous

8    outcomes.

9        In addition, the settlement provides free housing

10    counseling assistance from independent, nonprofit counseling

11    organizations.  Chase will pay for up to 50 hours of

12    counseling and more in circumstances where it's necessary.

13        The counselors who will be involved in providing those

14    services are independent nonprofits with an excellent

15    reputation for advocacy on behalf of homeowners.  The two

16    organizations are HomeFree-USA and National Council of La

17    Raza.

18        I want to mention on the record that no member of

19    plaintiffs' counsel team and none of the class counsel have

20    any financial interest in those organizations, and no money

21    is being directed to them for any -- no class counsel will

22    receive any benefit from money that's being directed to them

23    for counseling.

24        The settlement provides for foreclosure holds.  What

25    that means is that when the invitation letter that describes

1    the right to apply for settlement benefits goes out, Chase

2    will place a foreclosure hold when that letter is sent.

3    And, to make it less complicated, because the sending of

4    that invitation letter is going to be staged, the

5    foreclosure hold will go into effect at the time the first

6    of the invitation letters is sent.

7         In addition, there are additional foreclosure holds on

8    a case-by-case basis.  For those who need a hold pending the

9    mailing of the invitation letter, the settlement provides

10   that a class member who completes an application for loan

11   modification relief can get a foreclosure hold in place even

12   before the settlement is finally approved.

13        The settlement provides for fee waivers and

14   capitalization of fees associated with the prior

15   modification that made the settlement class member a member

16   of the proposed class.

17        It provides for waiver of late charges, penalties,

18   stop-payment fees, administrative processing costs, notary

19   and recordation fees, title costs, property valuation fees

20   and credit report fees.

21        In addition, foreclosure fees and costs, if applied to

22   the account, will be capitalized if the loan is modified.

23        We have, in connection with the settlement, drafted a

24   Notice, which is Exhibit D to the Settlement Agreement.  It

25   makes clear, among other things, that there are no cash

1    settlement payments, and explains what people will have a

2    right to in connection with applications for loan

3    modifications.

4        I think it's very important to note, your Honor, that

5    there is a mechanism to enforce the settlement.  The

6    settlement provides that there will be an arbitration if

7    class counsel concludes that Chase is not providing these

8    settlement benefits in good faith.

9        I think this will prevent a situation where homeowners

10   could be left in limbo again on their reapplications and

11   allows us to make sure that, with careful monitoring, these

12   settlement benefits will be made available fairly and with

13   all of the procedural protections that were agreed to.

14       There is a release associated with this settlement

15   which is consistent with res judicata.  The core of the

16   release is that claims that were or could have been raised

17   in this action, the action before this Court, based on the

18   transactional nucleus of operative facts, are released

19   unless the class member opts out.

20       There is a provision for attorneys' fees and class

21   representative payments.  Those were negotiated with the

22   assistance of a mediator after -- and I should say, all of

23   the settlement relief was negotiated with the assistance of

24   two nationally known mediators.  The provisions for

25   attorneys' fees and class rep payments were negotiated with

1    the assistance of a mediator after all of the relief for the

2    class was negotiated.

3         The settlement provides for class representative

4    service payments of $3,500 per class representative, and it

5    provides for an attorneys' fee payment of up to $9.5 million

6    if approved by the Court.

7         This, as you know, has been hard-fought, contested

8    litigation, and that's true both before and after the

9    multidistrict litigation was formed and cases were

10   transferred to this Court.

11        Counsel expects to show -- and I should say class

12   counsel expects to show that their Lodestar far exceeds

13   9.5 million at the time of final approval.  We have

14   committed, your Honor, to put information on the basis for

15   the fee request, including all of the papers we intend to

16   file with the Court, on the settlement website no later than

17   30 days after notice goes out.  That would give class

18   members an opportunity to review the basis on which class

19   counsel asserts a right to fees.

20        You have a Preliminary Approval Order in draft that is

21   agreed to by Chase and the plaintiffs here.  That Order does

22   a number of things.  It, first of all, certifies the

23   settlement class of between 55 and 60,000 individuals.  Our

24   papers are thorough on the certifiability of the settlement

25   class.

1          It's not my intention to make an additional

2     presentation about certification of the settlement class

3     unless the Court has questions or concerns about it.

4          THE COURT:  Regarding the class, it does not

5     include anyone who is presently in bankruptcy?

6          MR. KLEIN:  That's correct, your Honor.

7          THE COURT:  Or anyone who has been previously

8     foreclosed finally?

9          MR. KLEIN:  That's correct, your Honor.  Those

10    individuals would not be in the class, and that means that

11    they will not be releasing any claims in this case.

12          THE COURT:  Understood.

13          MR. KLEIN:  The Preliminary Approval Order

14    obviously also preliminarily approves the settlement.  It

15    appoints class representatives and proposed class counsel.

16    It approves the form of notice.

17          I wanted to mention just one thing on the form -- two

18    things on the form of notice.  One is that this case

19    involves class members who are still in their homes.

20    They're still customers of Chase.  It's quite likely that

21    the first class notice that we proposed to do will reach

22    almost all or all of the settlement class, and, therefore,

23    meets constitutional standards.

24          And, second, I wanted to mention that there has been a

25    discussion between the parties about whether the Notice will

1    be a bifold or trifold Notice.  There's a great deal of

2    debate in the settlement administration community about

3    exactly what form of notice is most likely to be opened.

4    We're, I think, going to ask the settlement administrator to

5    mock up the various options for notice and make a decision

6    about what we think works best.

7        What we are asking you to do is to approve the proposal

8    that it will be one or the other at this time.

9        Other things -- the other issue for the Preliminary

10   Approval Order is it will set the date of the fairness

11   hearing.  The parties have agreed that that date should be

12   no less than 130 days from the date that the Preliminary

13   Approval Order is entered, and if the Court were going to

14   enter the Preliminary Approval Order in the next couple of

15   days, we would ask for a fairness hearing date on or after

16   April 21, 2014.

17        THE COURT:  Mr. Bennett's letter, should I

18   anticipate that there are going to be counsel who will

19   intervene?

20        MR. KLEIN:  I think there's a couple of things I

21   wanted to say about that.

22        Mr. Bennett has been a participant at some level in

23   this litigation.  He had a case that was transferred here.

24   You remanded it, at his request at some point, and I believe

25   he has proceeded on some of his client's claims in Virginia.

1      Perhaps Chase could speak more fully about what happened

2      after remand in that case.  He has raised some things, and I

3      have not had a full opportunity to review his motion to

4      continue.

5             THE COURT:  I do not think there is much, and I am

6      not inquiring about his interest in the matter.  I am just

7      thinking in terms of how much time do I need to set aside

8      for the hearing itself.

9             MR. KLEIN:  I expect he will consider whether to

10     object on behalf of some or all of his clients.  I don't

11     know at this time whether that objection will have any meat

12     to it or not.  I don't  --  I also don't know whether the

13     people he represents are settlement class members under this

14     class definition at this point.

15        I do think, though, that to the extent he has raised

16     concerns, those concerns can appropriately be addressed, as

17     I think you pointed out in your order, at the final approval

18     hearing.

19            THE COURT:  So April 21 is the earliest --

20            MR. KLEIN:  And that -- we need 130 days to

21     accommodate the process, like getting notice out, allowing

22     people the opportunity to opt out and object, and then to

23     get our final approval papers on file.

24        So I don't want to anticipate that you're planning to

25     enter the order today, tomorrow, or in the next couple of

1     days; but, if you were, April 21 would be a sufficient date

2     to accommodate all those things.

3              THE COURT:  From what I understand of the

4     settlement and from what you've told me suggests that I

5     ought to review it sooner rather than later, because, if I

6     understand the foreclosure hold process, that is contingent

7     on the invitation letter being sent, and that does not go

8     out to any potential claimant under the class until the

9     preliminary approval is entered or --

10              MR. KLEIN:  It would go after the Final Approval

11     Order is entered.

12              THE COURT:  Oh, after the Final Approval?

13              MR. KLEIN:  Right.

14          And our concern on plaintiffs' side is that that happen

15     as early as possible, but based on the agreement we've

16     reached and the time it takes to get the class list together

17     and notice out, as well as providing an adequate opportunity

18     for objections and opt outs, we think the earliest that the

19     final fairness hearing could be held is 130 days after you

20     enter the Preliminary Approval Order.

21              THE COURT:  So would the typical recipient of the

22     letter at the moment be someone who is in default on the

23     mortgage --

24              MR. KLEIN:  Not exclusively, your Honor.

25              THE COURT:  -- teetering?

1          MR. KLEIN:  There may be people who cured the

2     default after not getting approved for a permanent

3     modification.

4          THE COURT:  They would still, nonetheless, be

5     eligible --

6          MR. KLEIN:  They would still, nonetheless, be

7     eligible as a class representative if their denial of the

8     permanent modification was not timely.  So they could have

9     cured after the denial but still be a class member.

10        But I would say that it's likely, and I haven't seen

11    the class list and haven't had an opportunity to do the

12    confirmatory discovery that we expect to do on how the class

13    list was he created, I think it's more likely than not that

14    the majority of the class is in default.

15         THE COURT:  And the class, in effect, is going to

16    be nationwide at this point?

17         MR. KLEIN:  Correct, your Honor.

18         THE COURT:  Okay.

19         MR. KLEIN:  Let me explain that there is an

20    opportunity, and it's described in the Notice, for anybody

21    who needs a foreclosure hold earlier than the invitation

22    letter goes out, to seek that and obtain that from Chase

23    upon completing the process of applying for a permanent

24    modification.

25         THE COURT:  How would they know this is an option

1    they have?

2             MR. KLEIN:  It's in the Notice, your Honor.  There

3    is a paragraph in the Notice.  I can point it out to you, if

4    you would like.

5             THE COURT:  No.  I just do not recall it.

6             MR. KLEIN:  There is -- we quite intentionally

7    include a description of the opportunity to apply for an

8    earlier foreclosure hold in the class Notice, and the

9    settlement administrator will have a dedicated 800 number

10   for the purpose of facilitating those case-by-case

11   foreclosure holds.

12            THE COURT:  Okay.

13            MR. KLEIN:  I don't have anything else that I

14   consider essential to present to the Court at this time.

15       Obviously, we will be in a position to address any

16   issues or objections that come up once the Notice goes out

17   and class members have had an opportunity to review the

18   settlement and make a decision about how to proceed.

19            THE COURT:  Can you remind me again of who the

20   mediators were that you worked with.

21            MR. KLEIN:  Judge Edward Infante, who is a former

22   magistrate in the Northern District of California and is now

23   at JAMS.  He's provided a declaration to the Court that lays

24   out the process by which the settlement was reached, and

25   another mediator in his office, Cathy Yanni, who also

1    participated actively in the mediation.

2         Both of them have extensive experience resolving

3    complicated consumer class actions and were very material in

4    providing assistance to the parties in getting this

5    resolved.

6         Judge Infante is a big Red Sox fan.  So if you have

7    occasion to talk to him about the settlement, you can

8    certainly spend a good deal of time talking to him about the

9    Red Sox.

10         THE COURT:  Last issue.  How did La Raza and

11    HomeFree become --

12         MR. KLEIN:  It was part of the discussions between

13    the parties.  We reviewed various options.  The goal was to

14    have at least one organization that could provide services

15    to Spanish-speaking class members.  The reason for choosing

16    HomeFree-USA -- and that would be, in this context, the

17    National Council of La Raza.

18         The reason for choosing HomeFree-USA is that they have

19    a model that would allow more face-to-case counseling, so

20    they wouldn't exclusively be counseling over the telephone.

21    They have affiliate organizations in many communities across

22    the country.  I don't want give you the exact number, but I

23    think it's something like 30 communities across the country.

24    So people would have the option, if they can get into one of

25    those offices, to have in-person counseling, rather than

1    telephone counseling.

2        I have worked in this area for many years, as you know.

3    I have run loan modification programs even as far back as

4    the time I worked at the National Consumer Law Center, and I

5    am convinced that these are two of the best organizations

6    out there for the quality of their housing counseling

7    assistance to homeowners across the country.

8        THE COURT:  By experience I have reason to rely on

9    you and the accomplishment.  I am not trying to prejudge any

10   potential objection to the settlement, but I know, again

11   from experience, that your work is always directed in the

12   right places; not always with the result, perhaps, that

13   you --

14       (Laughter.)

15       MR. KLEIN:  Well, we ought not go into the cases

16   that we lost in front of you, your Honor, but the reality is

17   that I feel very strongly that this is a settlement that is

18   very much tailored to the results that the plaintiffs and

19   the class members were looking for when we commenced these

20   cases.

21       THE COURT:  Well, at least preliminarily I'm

22   impressed with the thoughtfulness of the way the settlement

23   is structured.  No coupons, but actually some potential for

24   valuable relief to those who were affected class members.

25       I do not want to exclude Chase from the discussion.

1          MR. AGOGLIA:   Thank you, your Honor.

2     I do hope to be very brief.

3     You were absolutely right, though.  This preliminary

4 approval hearing comes in an atmosphere where Chase's

5 efforts to put the mortgage crisis behind it are front-page

6 news again and again.  And you also know, however, that the

7 efforts to think critically about possible resolution of

8 this matter going back years, and is really owed, in no

9 small part, to your opening comment in the motion to dismiss

10 here that you thought it might be sort of viable for

11 settlement purposes but there might be difficulties

12 litigating to that conclusion.

13     I am very confident this stands alone as a fair,

14 reasonable, and adequate settlement.  The mediators involved

15 are on the short list, I mean top one, two or three, of just

16 about every significant player on both sides of the V in

17 this case.  They're nationally renowned.

18     It was a hard negotiation.  Chase enlisted the

19 resources of its senior management involved in actually

20 implementing, executing these programs so we would have an

21 informed view of what was achievable, practicable, and

22 helpful, and I think that's what this reflects.

23     And even though I'm very confident that we can meet the

24 correct standard that this needs to stand on its own, at the

25 same time, I would say, as to even the most recent

1    Department of Justice settlement, it's absolutely

2    complimentary that the $13 billion much-reported settlement

3    provides for something on the order of $4 billion worth of

4    consumer relief.  And much of that is in the form of credits

5    or targets that Chase has to meet by a deadline, and some of

6    those targets were met by performing mortgage modifications,

7    principal forgiveness, principal reductions, doing rate

8    reductions, doing forbearance.  And the structure of this

9    settlement is to reach out, to solicit in a meaningful way,

10   this population who came in through the earliest phase of

11   the program where everything wasn't verified up front, had

12   to prove eligibility in a number of ways, and didn't get a

13   mod decision or an approval from that process.

14       The structure of the settlement is that the invitation

15   letter allows them to express interest and go through the

16   process of qualifying under the programs that exist for them

17   and for which they are eligible today or at the time of

18   their application.  So there's every reason to believe that

19   they will, if eligible, be able to take advantage of all the

20   subsequent efforts.  And I think not a hearing has gone by

21   where you haven't noted the pace of change in this area in

22   almost all phases, including the consent decree with the

23   primary regulator, the OCC, the prior Department of Justice

24   consent order involving servicers.  I think in a very real,

25   significant, practical way this builds on those

1    accomplishments by providing, you know, the solicitation,

2    the free counseling, and the like.

3        As to the counseling providers, Chase had a very direct

4    hand in vetting and discussing and proposing these

5    organizations.  It has working, live partnerships with lots

6    of different advocacy groups, as you probably no doubt also

7    have read.  In the spectrum of those who have gotten

8    involved in counseling or putative counseling services, you

9    have, you know, the HomeFree and La Raza at one end, and you

10   have folks who are the subject of criminal activity,

11   criminal indictments, on the other.

12       And so having organizations which could deliver on a

13   nationwide settlement, had the platform to be able to do

14   that, had to band with, within a relatively short period --

15   because the idea is you have these letters go out, and then,

16   within a three-month period, people take advantage of

17   them -- had to band with to actually step up and service

18   those who wanted to take advantage of the free counseling,

19   was also significant.

20       And those two organizations have a proven track record,

21   specifically around mortgage modification counseling, of

22   knowing the programs, knowing HAMP, knowing the proprietary,

23   the nonfederal government programs, and so we think are the

24   best candidates to provide effective counseling for those

25   who choose it.

1            I would also note that although La Raza would certainly

2      be happy to provide counseling for Spanish-language speakers

3      where needed, they also are very clear that they are ready,

4      willing, and able to serve all borrowers, Spanish speaking

5      or otherwise, in connection with the counseling services

6      that may be required here.

7            Just getting down to the nitty-gritty of the Notice,

8      the distinction that Mr. Klein was drawing in the form of

9      notice, is the traditional stuffing in an envelope and

10     mailing it, versus what's generally called a self-mailer.

11     You've seen them probably every day in the mail.  They are

12     folded three times, six times, and have some adhesive, and

13     you open them up that way.

14           The self-mailers tend to be a little bit cheaper, but,

15     again, there are many, myself included, who think those are

16     more likely to be actually opened, than something that is in

17     an envelope and has some official-looking moniker on it and

18     requires additional effort.

19           But we are -- what we need from you, and what's not as

20     explicit in the Proposed Preliminary Approval Order, is that

21     the self-mailer is an option called out in the Settlement

22     Agreement, and unless you have an objection to that being on

23     the table for consideration, we'd like you to approve that

24     as an alternative means, as opposed to an envelope, and then

25     the parties, in consultation with the settlement

1    administrator here, KCC -- which, by the way, is a very

2    experienced national settlement administrator --

3              THE COURT:  I know of them.

4              MR. AGOGLIA:  -- and we'll make a final decision

5    there.

6         In terms of timing, the minimums here are -- we have,

7    you know, assuming you take it under advisement for a few

8    days, the mailing will go out sometime mid January.  Then we

9    have what I think is the minimum sort of due process period

10   of 60 days for borrowers to investigate, visit the

11   settlement website, call counsel if they choose, read the

12   papers, and decide whether to participate or to opt out or

13   to participate and object.

14        That deadline would fall sometime mid March.  And so

15   the week of the 21st becomes something of, I think, the

16   shortest period of time, if there are going to be

17   objections.  I wouldn't be surprised if Mr. Bennett shows up

18   as an objector.  That late April period, I think, is the

19   minimum time period.

20        And if it's going to be the week of the 21st, that's

21   fine, if that's where it is, but we'd ask that it not be the

22   Monday, if possible, with your calendar, and set a little

23   bit later in the week.

24        To answer a question I think Mr. Klein raised about

25   Mr. Bennett.  He was participating in the MDL.  He was not,

1    however, as I understand it, designated as part of the lead

2    counsel group.  He thereafter asked to be remanded.  The

3    case was on behalf of a single-named plaintiff,

4    Ms. Bordorlay [ph.].  It was remanded to Virginia, from

5    which it came, after that Court had entered a dismissal of

6    the core of their HAMP claims; and it was later settled,

7    and, I would represent to the Court, settled primarily on

8    the basis of other claims that were raised there.

9        So I don't know what Mr. Bennett is up to.  I know what

10   he says:  He just got to the office today and saw this and

11   asked for a continuance.  I agree your denial is the

12   appropriate course of action here.  We'll see what comes of

13   it.

14       That's all I have, unless you have questions for Chase.

15            THE COURT:  No.

16       To extend the compliment to Mr. Klein, it gives me

17   confidence to know that you are representing Chase, because

18   I know that you were probably not the easiest adversary that

19   Mr. Klein has ever dealt with --

20       (Laughter.)

21            THE COURT:  -- but always held the position of the

22   bank well.  I think I made it clear in one of the earlier

23   decisions in the case that while a lot of mistakes were made

24   in the implementation of HAMP, they were not all Chase's

25   fault.  As the program, I think, was conceived in Treasury

1   and the way the regulations were developed, you could see a

2   lot of opportunity for error that, in a way, the government

3   may have inflicted on the banks, and I see nothing wrong

4   with a bank or a business trying to do the right thing.  And

5   my initial impression is that that's what this settlement is

6   trying to do.

7       I know that Chase will approach it with good faith,

8   which is why I asked about the invitation letters and the

9   foreclosure holds.  I know there is a provision in the

10  settlement that provides that anyone whose mortgage service

11  is transferred to another servicer is excluded from the

12  class.  I know I can trust that does not mean that the "Son

13  of MERS" is suddenly going to wake up and find 50,000 people

14  transferred to some new entity that we are unfamiliar with.

15      What is interesting about the settlement, obviously, as

16  you would expect -- this is a discussion that has gone on in

17  my chambers with my law clerks, who have been involved in

18  the case, and one of the exercises that we have had is

19  trying to imagine what we would do if we were trying to

20  settle the case as between the plaintiffs and Chase.

21      And I have to say what you have done is not too

22  dissimilar from some of the ideas that we had, only yours

23  look a little better, actually, in the sense that they are

24  more fully thought out than some of what we thought might be

25  an appropriate resolution of the case.

1          Again, I do not want to give the appearance to

2     Mr. Bennett or to anyone else that I am prejudging what

3     anyone may say by way of objection, because there may be

4     things I have not thought of that I should consider.  But,

5     at first blush, I see no reason not to finish the review

6     either by the end of this week or, more likely, early next

7     week and proceed with the preliminary approval so that we

8     can get the process started on what seems to me to be a good

9     resolution of a very difficult litigation.

10          MR. AGOGLIA:  Let me just call out that one

11    provision which allows, for the first time in my experience

12    in settling class actions over more than two decades, a

13    class member to obtain the benefit of the settlement before

14    there is final approval; that is, before Chase gets the

15    benefit of the bargain itself, because until final approval

16    and the settlement is effective through a judgment that's

17    not subject to appeal, it gets no release.  But as a matter

18    of abundant good faith, if folks get the Notice and submit

19    the required documentation to say, "I want you to put a hold

20    on that," you know, the decision is, "Get them the relief,

21    see if they're eligible, run you them through," rather than

22    hold off, as you would in every other case, before

23    administering the class benefit until you have the judgment

24    in hand.  So that, I think, is certainly an issue bargained

25    for by their counsel but something Chase agreed to.  And I

1    think it does market as unusual, and unusually beneficial,

2    because it does confer on those who might be most

3    vulnerable, if they have a notice of sale pending, the

4    opportunity to take full advantage of this.  And there are

5    other advantages, which I'm sure we'll get into at the time

6    of final approval.

7         But we appreciate your hearing us out today, and I know

8    that we will be prepared to make sure that the

9    administration of this goes exactly according to plan.

10        If it would be helpful to the Court, I'm sure we would

11   be inclined to submit a revised preliminary approval order

12   with dates put in there, if that would help.  You just need

13   to let us know if that would be helpful.  If not, I think

14   we've structured it where just the final fairness hearing

15   date needs to be inserted, and the rest operate mechanically

16   by an operation of the number of days from entry of that

17   order.

18             THE COURT:  If I think it helpful, I will ask for

19   it.  But now that I know that April 21st is the first real

20   date for a final hearing, I think we can work our way into

21   it.  So I think that should be absolutely fine.

22        You know, when I said -- actually the provision you are

23   pointing to, the foreclosure hold, when I say that I think

24   you have improved on my ideas of how to settle a case, that

25   is something I had not thought of.  I think it is

1  imaginative, and, again, I like the idea of expediting

2  relief for the class, again assuming that final approval is

3  allowed.

4       Thank you, counsel, for what I know was a lot of work.

5            MR. AGOGLIA:  Thank you, your Honor.

6            THE CLERK:  All rise.

7       (Proceedings adjourned.)

8

9                    **C E R T I F I C A T E**

10      I, James P. Gibbons, Official Court Reporter for the

11  United States District Court for the District of

12  Massachusetts, do hereby certify that the foregoing pages

13  are a true and accurate transcription of my shorthand notes

14  taken in the aforementioned matter to the best of my skill

15  and ability.

16  /s/James P. Gibbons          January 6, 2014
    _____
17  James P. Gibbons

18

19              JAMES P. GIBBONS, CSR, RPR, RMR
                   Official Court Reporter
20              1 Courthouse Way, Suite 7205
                 Boston, Massachusetts 02210
21                 jmsgibbons@yahoo.com

22

23

24

25